IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
___Eastern___ DIVISION

RECEIVED
2022 NOV -3  P 4: 3⁻

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Michael A. Kennedy

**PLAINTIFF**

v.                                        CASE ACTION NO.: 3:22-cv-645-ECM-JTA

State of Alabama
Department of Transportation

**DEFENDANT**

JURY DEMAND (MARK ONE)

☐ YES    ☑ NO

## EEOC COMPLAINT

1. Plaintiff resides at  2308 Nail Court, Phenix City, Alabama 36869

2. Defendant(s)' name(s)  State of Alabama Department of Transportation

   Location of principal office(s) of the named defendant(s) 1409 Coliseum BLVD, Montgomery, Alabama 36110

   Nature of defendant(s)' business State agency overseeing construction and maintenance of highway system throughout the state.

   Approximate number of individuals employed by defendant(s) 4,000

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employement discrimination. Jurisdiction is specifically conferred on the Court by 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 §2000e-5(g).

4. The acts complained of in this suit concern:

    1. ☐ Failure to employ me.
    2. ☐ Termination of my employment.
    3. ☐ Failure to promote me.
    4. ☑ Other acts as specified below: Failure to comply with the Family Medical Leave Act (FMLA) and Americans with Disabilities Act (ADA) by discriminating against Mr. Michael A. Kennedy due to a qualified intermittent medical condition. Punished for excessive absence and tardiness irregardless of an agreement with 2 direct supervisors to work with him. Punishment (see attached to continue)

EEOC Complaint Continued:

#4.  OTHER acts as specified below:  Failure to comply with the Family Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA) by discriminating against Mr. Kennedy due to his qualified medical condition.  Mr. Kennedy was punished for excessive absence and excessive tardiness regardless of an agreement with 2 different direct supervisors to work with him.  These agreements were in writing.  The first being in 2007 and the remaining being in 2018 and 2019.  Mr. Kennedy was written up, not by his supervisor, but by Rebekah Crawford the District Administrator.  Mr. Oliver, Mr. Kennedy's supervisor was simply told to sign the documents and present to Mr. Kennedy.  Mr. Oliver stated that he was not the one to initiate the write up, he was simply instructed to sign it.  Mr. Kennedy was penalized for confusion (a part of his medical condition) when he erred entering time on the timesheet.  When Mr. Kennedy rebutted with proof of the issue he was told that his response didn't matter.  Each time Mr. Kennedy filed a grievance or complaint up the chain of command Ms. Crawford would place another obstacle, such as refusal to allow him overtime on projects he was busy with.  He was told he would be the last person to get overtime.  Mr. Kennedy was ordered to park at the district office, even though that meant he had to go out of his way to pick up the work truck.  He was further ordered to drive said state vehicle off the clock.  Mr. Kennedy is the only one in the project office under this order by Ms. Crawford.  Once Mr. Kennedy's physician responded to Ms. Campbell's FMLA documents stating that Mr. Kennedy was safe to drive, Ms. Campbell returned the same documents to the physician twice more and further had a stern conversation with the doctor's office personnel. On the third set of documents completed by the physician, mere days later, the physician ultimately indicated a negative response to the driving question.  As soon as the negative response was indicated, Ms. Campbell presented Mr. Kennedy with documents stating he could no longer continue in his job since driving was an essential function.  Mr. Kennedy ultimately accepted a position 78 miles (one way) from his home on the advice of his attorney to maintain employment.

5.  Plaintiff is:
    A.   _x_ Presently employed by the defendant.
         ___ Not presently employed by the defendant. The dates of employement were
         _____ Employment was terminated because:

         (1)  ____ Plaintiff was discharged.
         (2)  ____ Plaintiff was laid off.
         (3)  ____ Plaintiff left job voluntarily.

6.  Defendant(s)' conduct is discriminatory with respect to the following:

    A.  ____ My race.
    B.  ____ My religion.
    C.  ____ My sex.
    D.  ____ My national origin.
    E.  _X_ Other, as specified below: FMLA was not offered within the 5 day federal requirement.
    Mr. Kennedy was punished for time taken off due to his known medical condition, accused of stealing time, and singled out and treated differently from other employees in respect to overtime, parking at the office, etc.

7.  The name(s), race, sex, and the position or title of the individual(s) who allegedly discriminated against me during the period of my employment with the defendant company is (are) Rebekah Crawford, White, Female, District 66 District Administrator; Undrea Campbell, Black, Female, Region Equal Employment Officer; Taylor Oliver, White, Male, Project Manager;

8.  The alleged discrimination occurred on or about October 25, 2021.

9.  The nature of my complaint, i.e., the manner in which the individual(s) named above discriminated against me in terms of the conditions of my employment, is as follows:

    **See the attached statement.**

10. The alleged illegal activity took place at the District 66 office in Salem, Alabama and the project office currently located in Opelika, Alabama.

11. I filed charges with the Equal Employment Opportunity Commission regarding defendant(s)' alleged discriminatory conduct on or about April 22, 2022.
I have attached a copy of the Notice-of-Right-to-Sue letter issued by the Equal Employment Opportunity Commission. The letter was received by me on August 5, 2022.

12. I seek the following relief:

   A.  X   Recovery of back pay.
   B.  X   Reinstatement to my former job, and any other relief as may be appropriate, including injunctive orders, damages, costs, and attorneys fees.

Date: November 3, 2022

*Michael Kennedy*
Signature of Plaintiff

2308 Nail Court, Phenix City, AL 36869
334-614-2632

Address & Telephone Number of Plaintiff

# Date Outline

September 4, 2007 - Doctor Rountree diagnosis me with Vertigo

September 5, 2007 – Letter written to Prater notifying him of my diagnosis and that he will accommodate me.

September 6, 2018 – Letter written to Taylor notifying him of the vertigo diagnosis, said he would accommodate me.

April 5, 2019 – Letter written to Taylor notifying him of the diagnosis of Meniere's Disease

   **** Was never asked to fill out FMLA forms by employer within 5 days as per federal law

April 25, 2019 – disciplined for getting work truck stuck, no damage to the truck

May 3, 2021 – asked Taylor about why Sean Patterson got project manager status on NH-0001(619) project

May 4, 2021 – Talked with Rebekah about Sean getting project Manager status, denies me Project Manager position based on my medical. Says I will never be in a higher position as long as she is working there.

May 10, 2021 – Talked with Undrea about Rebekah denying me Project Manager position, said it wasn't discrimination and to file FMLA forms and to talk to Wes about it. Called Wes, said to call him in the morning.

May 11, 2021 – Talked with Wes about Rebekah and what she told me. He said that he will talk to her.

June 2, 2021 – Counseling about coming in late, despite the accommodation agreement

August 13, 2021 – e-mail from Rebekah about FMLA being approved. FMLA form

August 24, 2021 – e-mailed Stephanie Henderson backdated days that FMLA needs to be used
   (June 22, 2021 (1 hour), June 28, 2021(2 hours), July 12, 2021(3 hours), July 22, 2021 (2 hours))

September 1, 2021 – tablet page stating that I was driving personal vehicle straight to project office to move work truck to project office.

October 25, 2021 – Reprimanded for excessive absentism, excessive tardiness & falsification of record
   (altered the stolen time sheets to take more away)

October 26, 2021 - text message about Taylor taking me back to move truck to Project Office, as per Taylor Approval

November 1, 2021 – Rebuttal to reprimand (includes explanations, doctors notes, call logs, letters, pictures of personal vehicle at Project Office)

November 10, 2021 – documents of state illegally taking away my time & FMLA

November 17, 2021 – Project Manager Taylor Oliver talks to me about signing the time documents, says I was required to sign them.

November 18, 2021 – Met with Rebekah, she upholds reprimand, despite the Accommodation agreement from September 6, 2018 & April 5, 2019 and the witness statement and pictures of my personal vehicle being at the office. Reminded Rebekah I have a protected medical issue. She tells me that my medical issue doesn't cause me to come in late.

November 18, 2021 – Letter from EEO Undrea Campbell stating that I wasn't allowed to move the work Vehicle, despite supervisor permission.

November 18, 2021 – Added document taking away more of my time.

November 18, 2021 – journal entry about meeting with Rebekah

November 22, 2021 – text messages where Taylor Oliver states that he didn't make a complaint against me, but had to sign it because he is supervisor. Also, that others have choice to park at either location, where I don't have the choice.

November 22, 2021 – Letter from Stephanie Henderson taking my time away.

November 30, 2021 – 4 grievances filed

December 1, 2021 – Talked with Mr. Graben about my complaints. Dropped off the 4 grievances

December 3, 2021 – (Journal entry) Gwen contacts me and says that she has papers for me and Taylor to sign

December 6, 2021 – (Journal entry) Talked with Stephanie Henderson about the papers to sign. She States that somebody wrote "Refused to Sign" of papers

December 7, 2021 – Told Taylor that we needed to sign some papers at Gwen office and he states that he didn't write the reprimand

December 14, 2021 – Sharon Ellis upholds reprimand stuff, disregards my medical condition

December 15, 2021 – (Journal entry) Taylor states that I was the last one to work with my contractors before or after the normal hours. States he was ordered by Rebekah to do it that way. Supported by text messages.

December 21, 2021 – e-mail to Undrea Campbell letting her know that Taylor has made another

accommodation for me

December 27,2021 – Doctor appointment, doctor states that what supervisors are doing to me is causing my medical issues to be enhanced.

December 27,2021 – Filed grievance about me being treated different with respects to everyone else.

January 10,2022 – Wes Fulmer dismisses my grievance claiming that it is part of the reprimand and is not able to file a grievance for it

January 11,2022 – (journal entry) Taylor states that he didn't have any input in the reprimand, just told to send documents to Rebekah

January 12,2022 – filled out an ADA Assessment worksheet for accommodation to work longer hours working with Contractors to make up for time my illness has me come in late.

January 14,2022 – Falsification of records counseling

January 20,2022 – (journal entry) Meeting with Wes Fulmer and Sheri

January 24,2022 – Memo from Undrea Campbell about accommodation form

January 24,2022 – (journal entry) Called Federal Wage and Hour Division and found out that I was suppose to be paid for having to drive a work truck from one location to another. Said that they don't enforce it, but to keep track of the time and do a Civil suit. Talked with EEOC and explained what was happening, Mike told me to fill out a inquiry request.

January 31,2022 – Appeal grievance sent to personnel Dept.

February 7,2022 – First ADA form filled out by doctor office, **no restrictions.**

February 9,2022 – 2nd ADA form from doctor office, **no restrictions**

February 11,2022 – Letter from personnel Dept dismissing the grievance appeal from 1-31-22.
(journal entry) Talked with Phillip McIntosh to see if he received appeal, because Sharon said that I didn't fill it out correct.

February 28,2022 – Harassment and Discrimination form filled out and sent in about me not allowed to work overtime to deal with contractors.

March 11,2022 – Undrea brings a summary of the ADA process and an accommodation offer. **No restrictions**. I reject the offer due to being able to be written up by Rebekah if

Taylor allows me to work over hours.

March 15,2022 – (journal Entry) Went to Montgomery to meet with Adrian and answer questions for the Discrimination complaint

March 16,2022 – (journal entry) Talked with Adrian on the phone and told her about the proof I had and the fact that I was written up for days that FMLA was used and the accommodation that I had with Taylor.

March 17,2022 – Adrian emailed questions to me

March 18,2022 – finished the last question from Adrian from yesterday

March 21,2022 – Undrea sends Dr. Blankenship a letter asking if I was safe to drive if I have an episode

March 24,2022 – Dr. Blankenship changes ADA form after talking to Undrea on the phone. Faxes it to Undrea. **Driving restrictions NOW!**

March 24,2022 – Taylor hands me an envelope with the changed form in it. I called the doctors office to ask about the change and told him that the medicine controls the issue with me. The nurse Sabrina talked with the doctor and then tells me that he told Undrea that he answered the form for a basic Meniere's patient, not for my specific condition.

March 28,2022 – Dr. Blankenship changes form again, noting that My issues only happen in the mornings. **Driving Restrictions Remain**

April 1,2022 – Undrea gives me a letter stating that I can no longer work at the project office.

April 1,2022 – email from wife Wendy about her discussion with Nurse Sabrina. The nurse stated that she talked with Undrea, not the doctor.

April 3, 2022 – (journal entry) Talked with Dr. Blankenship office about if symptoms could be a different illness due to the fact that Chiropractor relieves the symptoms and my hearing tests have improved. Dr got mad and said that he wasn't changing the diagnosis.

April 6,2022 – (journal entry) received call from Michel / King attorneys, Doctor appointment, talked with UAB hospital.

April 8, 2022 – Undrea sends another letter about changing jobs

April 26,2022 – Got response from the Discrimination complaint that I wrote on Feb 28,2022. The discrimination was knocked down to a grievance and then dismissed.

Discrimination investigation – Mr. King never responded to the rebuttal, even though I sent him proof that disputes a lot of the rebuttal.

9. Nature of Complaint

    I have been working with the Alabama Department of Transportation since August 26,2002. I was doing good until September 4,2007, when I was diagnosed with Vertigo (dizzy spells) that started happening in the morning hours. This caused me to have to day days off or come in late on some days. After my diagnosis, I typed up a letter dated September 5,2007 (exhibit 1) to notify my supervisor, Robert J. Prater, explaining the reason that I was coming in late. At this time, I was seeing specialists to try and see if I could get relief for my vertigo. I was given medicine that would deal with the vertigo, but it took time to activate. Once I was at work, I never had any issues with the vertigo. Despite Robert Prater saying he would accommodate me for my medical issue, I was still criticized for missing work. Mr. Prater retired and Taylor Oliver became the new Project Manager around 2018. I was still coming in late at times, because of my medical situation, but my project manager Taylor Oliver approved all of my leave slips. I talked with Taylor about my medical situation on September 5,2018 after all co-workers left the office and presented him with a letter about our conversation dated on September 6,2018 (exhibit 2) to have for his records. I wanted him to have it, so he could explain to others in case anybody asked about me. I started seeing Dr. Blankenship, who diagnosed me with Meniere's Disease on April 4,2019. I wrote Taylor Oliver another letter notifying him of the Meniere's diagnoses on April 5,2019(exhibit 3). I again asked Taylor if there was anything else I need to get him for his records. He told me that nothing that he thought he needed from me. At this time, I was never offered any paperwork to see if I qualify for FMLA. I recently found out was suppose to be offered to me within 5 days as per federal guidelines(. On May 3, 2021, I noticed that Sean Patterson was put as project manager on project NH-0001(619) (exhibit 4 & 5). A project manager is the highest supervisor position at project level that oversees construction projects and controls project inspectors. The position gets more power and control over people. On May 4,2021, I went to ask Rebekah Crawford about Sean Patterson being put as a project manager. Rebekah tells me that I am unreliable and makes up a story about me telling contractors how to do their job (exhibit 4). I told her that I have a medical condition, but I never missed any of the contractors that was my responsibility. I have a lot more experience than Sean and even worked several jobs by myself and was a project manager to finish a project. Sean has been with the state for about a year and doesn't have the knowledge to work a project by himself. Rebekah told me that I will never be a project manager as long as she was a district manager above me. On May 10,2021, I met with Undrea Campbell and explained that Rebekah Crawford put Sean Patterson as a project manager over me because I have a medical issue. Undrea Campbell told me that it wasn't discrimination for Rebekah to put Sean over me as a project manager. She told me that I need to fill out FMLA forms for an Intermediate condition and that I needed to talk with Wes Fulmer about Sean being put as project manager over me. Undrea Campbell also told me that she knows what I go through, because she also deals with vertigo (exhibit 6). On May 11,2021(exhibit7), I met with Wes Fulmer and discussed the situation with Rebekah saying that she will never put me as a project manager. Wes Fulmer said that he will talk to Rebekah about the situation and see why I would never be a project manager. On June 6,2021, I had a counseling session about me being late for work (exhibit 8). This happened despite the accommodation agreement from September 6, 2018. I told Taylor this at the counseling session and he told me that Rebekah directed him to do the counseling session. On August 13,2021, I got an e-mail from Rebekah Crawford stating that I have been approved for FMLA (exhibit 9). The FMLA was backdated to June 16,2021, the date that Stephanie Henderson started the process. August 24,2021, I e-

mailed with Stephanie Henderson about some past days that I need to charge FMLA (exhibit 10). The days were as follows: June 22 (1 hour), June 28 (2 hours), July 12 (3 hours) and July 22 (2 hours). October 25,2021, Taylor Oliver was directed by Rebekah Crawford to reprimand me for Absenteeism (excessive absences), Tardiness (not on job ready for work at the beginning of the shift) and Falsification of Records (Recording incorrect hours on sign in sheet) (exhibit 11). (Exhibit 47) shows that my immediate supervisor did not complain but was told to reprimand me from his supervisor Rebekah Crawford. Taylor still had the accommodation with me from the letter dated September 6, 2018 (exhibit 2). Excessive absences include June 1,2021 (medical condition), August 9,2021 (Took sister to doctor appointment in Birmingham), September 7, 2021 (dizzy, medical condition), September 27,2021 (dizzy, FMLA used), October 4,2021 and October 5,2021 (both days, whole family had food poisoning). Absent 6 days in 5 months, while other co-workers have been absent more days and not medical related. No other co-workers were reprimanded for being absent for more days. Supervisor Taylor Oliver was notified before each absence as policy requires and Taylor approved all leave time. The tardiness still falls under the accommodation agreement from the letter dated September 6,2018. Again, my supervisor Taylor Oliver was notified of every day that I was coming in late and he approved all my leave slips. Some of the reprimand days were FMLA time (exhibit 10). The days were June 22,2021 (1 hour), June 28 (2 hours), July 12 (3 hours) and July 22 (2 hours) (exhibit 11B). For falsification of records, I actually drove directly to the project office as per agreement with supervisor Taylor Oliver to attempt to move the work truck. Both Taylor Oliver and Rebekah Crawford were gone to a Conference around the Mobile, Alabama area. The conference was for 1 week starting around September 1,2021. Some contracted COVID at the conference, so Taylor and Rebekah had to take off 2 extra weeks for COVID safety. Yet, I was still reprimanded for not being at work, when I was at the office. I have a witness, Ivey Queen, that wrote a letter (exhibit 13) stating he seen me at the office in the mornings, but because it was weeks and months before, he couldn't remember the exact dates. I also provided pictures I took of my vehicle at the office in the mornings (exhibit 13), which were turned in with the rebuttal to the reprimand. Yet, Rebekah ignored this evidence to take a pay raise away and punish me. Days and hours were supplied to me as part of the reprimand (exhibit 11C). After my rebuttal was submitted, Rebekah changed the days and hours adding October 18,2021 to October 29,2021 (exhibit 11D), so I couldn't provide any proof against those days. October 26,2021, Taylor Oliver had Dylan (PCET) take me from the project office to move my work truck from the district office (exhibit 12). November 1,2021, my wife brought my rebuttal (exhibit 13) for the reprimand to Taylor Oliver. I had jury duty (exhibit 13) starting that day, so couldn't be at the office. On November 18,2021, I met with Rebekah about the reprimand decision (exhibit 14). I asked Taylor to go to the meeting with me, so he could verify accommodations and other information pertaining to the reprimand, but Taylor told me that Rebekah ordered him to not go to the meeting with me (exhibit 18). She tells me that the reprimand is warranted, despite the witness statement, the pictures of my vehicle at work, the accommodation letter dated September 6,2018 (exhibit 2) and the 4 FMLA days (exhibit 10). As a result, I am the only one required to park at the district office and drive (off the clock) to my work office, I have to work 0700 to 1600 only, despite accommodation by supervisor Taylor Oliver, required to follow the attendance policy and sick policy (which I have been), and to accurately report my time (which I have been, besides few days based on my medical diagnosis) (exhibit 14).Rebekah tells me that if I don't like it, "file a grievance". Based on their supposed Falsified hours they claim, Rebekah states that the Legal Department is going to take away my leave hours and my FMLA hours (exhibit 15). I also got a letter from Undrea Campbell stating that I need to drive my truck, off the clock, to my work office. States that I didn't have an accommodation to move

the truck to park at my work office (exhibit 16). My supervisor Taylor Oliver told Dylan to take me to move the truck (exhibit 12), so I had my supervisor's permission to move it, it's not an accommodation. I was presented another document dated November 18,2021, showing that they were taking more of my leave time and FMLA hours away from me (exhibit 17). I did not approve any leave time or FMLA hours being taken from me. November 22,2021, talked with Taylor about if he filed the reprimand against me. He said that he just supplied some documents and was ordered to sign them. Same conversation states that I did have the choice from him as to where I could park my vehicle. Also, states that Jr has the right to choose where to park, but I don't have a choice. I am the only one that can't choose, but others can choose. I was sent documents from Stephanie Henderson showing changes to my FMLA hours that were not approved by me (exhibit 19). I was also denied my FMLA hours on 6-30-2021 and 7-15-2021 because they state that I never notified my supervisor, but I told him in person on those days. I took Rebekah advise and filed 4 grievances against her on November 30, 2021 (exhibits 20). December 1,2021, I called Mr. Steve Graben (Region Engineer) and told him what has happened to me and he said to send him the 4 grievances (exhibit 21). December 15, 2021, my supervisor Taylor Oliver tells me that I was not allowed to work extra hours and I was the last one to work extra hours, because, "Rebekah told him to do it that way" (exhibit 22 & 23). So, after I filed 4 grievances against Rebekah, she orders my supervisor to make me the last person to work any overtime hours. December 21,2021, I e-mail Undrea Campbell that me and Taylor have come to an accommodation to check my time after each pay period (exhibit 24). December 27,2021, went to a doctor's appointment where the doctor concluded that Rebekah has enhanced my medical symptoms by taking my time and money away (exhibit 25). Filed a grievance on December 27,2021 against Rebekah for treating me different than my co-workers by not allowing me the same opportunities to work any extra hours, even if it's my contractor (exhibit 26). January 11, 2022, talked with supervisor Taylor Oliver, who states that Rebekah never requested his input about the reprimand and that he approved all my time off (exhibit 28). January 12,2022, I filled out an ADA assessment form to request an accommodation to make up hours lost due to my medical issues (exhibit 29). Met with Wes Fulmer and Sharon Ellis on January 20,2022 (exhibit 30). Wes Fulmer responds stating I can't file a grievance against the incident (exhibit 27). Sharon Ellis responds to my grievances stating that Rebekah has the right to treat me differently than other employees (exhibit 31). Sharon also states that Undrea Campbell letter (exhibit 16) is justified, even though my supervisor Taylor Oliver had me move the work truck. Sharon states that she reviewed the reprimand (exhibit 11) and concludes that it is warranted despite the witness, the pictures, the discipline for the FMLA time I took and the accommodation made with my supervisor Taylor Oliver. Called Federal Wage and hour division and was told that if the employer requires an employee to drive from one location to another, they suppose to be paid for it (exhibit 32). January 31,2022, I sent an appeal of the grievance proposal for the grievance decision from Sharon Ellis (exhibit 33). February 7,2022, ADA forms completed and given to Undrea Campbell (exhibit 34). The forms contained no restrictions for me. February 9,2022, Dr. Blankenship resubmitted the ADA forms with no restrictions for me (exhibit 35). February 11,2022, Phillip McIntosh sent response to my appeal (exhibit 33) of Sharon Ellis decisions (exhibit 31) and states that he agrees with her decision. Phillip agrees (exhibit 36) with violating my accommodation with Taylor (exhibit 2), writing me up for taking FMLA (exhibit 10), and treating me differently by having me be the only worker required to park at a certain location and drive (off the clock) to another location. February 28,2022, I filed a discrimination complaint (exhibit 37) based on me not being treated the same as others by restricting me from working overtime hours, while my co-workers are allowed to. March 11,2022, Undrea Campbell presents me with an accommodation (exhibit 38), which I rejected due to Rebekah

being able to discipline me if Taylor Oliver allows me to do something. March 16,2022, I talked to Adrian McIntosh (division EEO) about the discrimination complaint (exhibit 39). I told Adrian how I was reprimanded for days I used FMLA, reprimanded for going to doctor's appointments, my supervisor Taylor Oliver was accommodating me and notified of all days I have to take off and that I have evidence of me not falsifying any time. March 21,2022, Undrea Campbell talks to Dr. Blankenship's office about changing my ADA form to where I am not safe to drive (exhibit 40). March 24, 2022, Dr. Blankenship office faxes Undrea Campbell a changed ADA form after she talks to the doctor's office (exhibit 41). Now I am not safe to drive a vehicle after Undrea talks with a nurse at the doctor office. Undrea has Vertigo just like me and she is able to drive a state vehicle, but I am not. March 28,2022, Dr. Blankenship office sends Undrea Campbell another changed ADA form saying I am no safe to drive (exhibit 42). April 1,2022, Undrea gives me a letter that I am to be separated from my position and I can choose to have them find another position for me to work in (exhibit 43). April 8,2022, Undrea Campbell presents me with the Accommodation form again to give up my position (exhibit 44). I add information to consider that I never had an issue driving and that my supervisor has known about my medical situation and can verify no problems with me working. I have called the Troy Division, Montgomery Division and the Region office to check on any openings for me to move into, there were no openings. April 26,2022, I get a response back from the Discrimination complaint (exhibit 39). Mr. Steven Graben states that the personnel department has changed my Discrimination complaint to a grievance (exhibit 45). In the response, Mr. graben admits there are problems with the reprimand and states that I can't get overtime because my medical issue causes confusion (foggy head).

On April 22,2022 I filed a charge of discrimination with the EEOC through my attorney Mr. King from Michel/King Law Firm. On May 31,2022, the State of Alabama Department of Transportation submitted a rebuttal to my claim. I have contacted my attorney several times after the rebuttal asking if they needed anything from me for the rebuttal and they always said, 'No". I did submit some documents to my attorney that refute the states claims in the rebuttal. Despite my documents refuting the respondents claims, my attorney refused to file a rebuttal on July 7,2022. This caused the EEOC to close the investigation on August 5,2022 and my attorney to stop representing me. The entire EEOC investigation will be attached as (Exhibit 46).

I would like to respond to their claims against me in this rebuttal for you:

7. The state claims that I have had an attendance and punctuality issue for over 1/3 of, my career. This claim is not correct, as to the Accommodation that my supervisor Robert J. Prater made for me (exhibit 1). This shows that despite the Accommodation given to me by my supervisor, I have been told that I need to work on my attendance, but they also knew I was seeing doctors and had a medical issue that I was working on. My supervisor Robert J. Prater told me that every mid-appraisal contains something that an employee needs to work on for the appraisal because no employee is perfect. Since, my work performance was good, all he can do was say I needed to work on attendance. If you look at my final appraisals, I have only had back marks on punctuality in 2 or 3 appraisals. These are the recent ones, despite the Accommodation for my health by Taylor Oliver (exhibit 2). On February 11,2015 I was

reprimanded for "operating a State vehicle in an unsafe manner". The unsafe manner was me trying to call the State Troopers for help because a lady was swerving at me, trying to run me off the road. Yet, the lady sent a video from her phone that she recorded leaning into her passenger seat of me trying to call the State Troopers for help. Yet, I was still discipline for it. On April 25,2019, I was disciplined for "abuse of equipment". Yet, I only got the truck stuck in the mud off a shoulder while performing my job as directed by my supervisor. The truck received no damage and I used my personal AAA to retrieve the truck, safely and without damage. The state personnel refused to help get the truck out, so I took it upon myself to free the vehicle in a safe manner. On June 2,2021, my supervisor Taylor Oliver told me that he was forced to do a counseling session with me on my tardiness by Rebekah Crawford, despite having an Accommodation (exhibit 2). On October 25,2021, I was reprimanded for 3 issues for which I have discussed earlier in this complaint. I was reprimanded for medical issues and tardiness even though I had an Accommodation with my supervisor (exhibit 2). This also includes the 4 days for which I was reprimanded for taking FMLA. Also, I have proof from a witness and pictures of my vehicle at the office for which I don't see attached to the rebuttal. My question is, "Where are these pictures that show my innocents?" Why are they not attached to my rebuttal to the reprimand? They were in the sealed envelope presented to my supervisor by my wife.

8. Any events that happened before the 180 days are just shown as what has been done to me through the years with my job, I am not claiming them as part of the Discrimination. It just shows a pattern.

9. The Accommodation I had with my supervisor Taylor Oliver (exhibit 2) was the ADA process for which was protected disability. My FMLA forms were filled out indicating my "Intermediate" disability condition (exhibit 9). I was reprimanded for my medical situation, which includes discipline for days I took FMLA (exhibit 10). They state that I am not regarded as disabled, but my FMLA is for an "intermediate" disability.

10. They claim that I wasn't retaliated against. After disputing the reprimand, I was subject to do things that no other employee was required to do. I had to pick up my work truck from a separate office than my work location when all other co-workers had a choice where to park (exhibit 47). I was also restricted from work overtime hours for which some contractors I deal with require me to (exhibit 47). Retaliation also occurred when I had my leave hours and FMLA time taken from me without my approval (exhibit 15). Then taking more hours away when the documents were added and changed (exhibit 11D & 17).

11. Several employees are involved with these actions, which are employed as a whole with the Department of Transportation. It was a combined Department effort.

12. Letters from (Exhibit 1 & 2) show Accommodations for me to come in late until I can get my medical under control.

13. A discussion occurred with Rebekah Crawford on May 4,2021 (exhibit 4). Sean Patterson was assigned a project over me because I was having medical issues (exhibit 5). The position does give more power to an employee. The position gives orders, instead of takes orders from a project manager.

14. A verbal complaint was put into Undrea Campbell, which she never told me to submit the claim in writing. (exhibit 6)

15. Letter to Taylor (Exhibit 2) shows that I did have an accommodation through Taylor to arrive late to work for my medical condition.

16. Letter to Taylor for Accommodation (exhibit 2). There was Ample evidence that I arrived at work through the witness statement (exhibit 13) plus the pictures of my personal vehicle at my office (exhibit 13), which the State fails to provide to prove my innocence.

17. Rebekah Crawford made me the only one to park there, while others had a choice (exhibit 47). Rebekah violated the Accommodation agreement with my immediate supervisor Taylor Oliver to discipline me. Then ignores proper evidence supplied (exhibit 13) that shows her accusation to me is incorrect. She purposely wanted to put restrictions only on me and punish me by illegally taking away my leave time and FMLA time.

18. The accommodation with Taylor Oliver (exhibit 2) shows I had an ADA agreement with Taylor. The FMLA was taken away from me as I was at work (exhibit 13) proven by pictures and witness statement. I did not approve the time being taken away. Rebekah said that the Legal Department authorized the illegal taking of my time. Mr. Graben himself said that there were issues with the reprimand (exhibit 45).

19. Changing how I can work is retaliation for the grievances I filed (exhibit 20). Before Rebekah Crawford telling Taylor Oliver that I was the last one to work any overtime (exhibit 23). Before Rebekah order, I was able to work with contractors that need an inspector until they were finished working for the day.

20. All my grievances had substantial proof that was ignored by everyone. My Discrimination complaint was downgraded to a grievance (exhibit 45) despite the order by Rebekah violating my protected medical disability.

21. Letter for Robert J Prater (exhibit 1) and letter to Taylor Oliver (exhibit 2) both provided me with an Accommodation to deal with my medical situation until I can get it under control. They were flexible with my tardiness and absences.

22. The ADA process was started around January 2022 or February 2022. Undrea Campbell received ADA form dated February 7,2022 (exhibit 34), February 9,2022 (exhibit 35) and offered an Accommodation on March 11,2022 (exhibit 38). None of these times did Undrea Campbell have an issue with my driving. The doctor office said it was safe for me to drive for all these Accommodation forms. Then on March 21,2022, Undrea asks about my driving, which the doctor has already answered. Undrea called the doctor office and talked with a nurse about my condition. Then after that call, the document was altered for her. Undrea Campbell told me that she also has Vertigo (exhibit 6). Yet, I was having my driving privileges removed for a same medical issue and she can drive without restriction. Why is it that 2 employees can have the same condition and one has their driving privileges revoked and the other has no restrictions?

23. The letter on April 1,2022 states that if they can't find a position for me, then I will be separated from my job. I again state that she was able to drive with Vertigo and I was not able to drive for having the same condition. I called the Troy division office and talked with the Division Engineer. I also called

the Montgomery division office and the Region office. I talked with all the Office Managers and other higher supervisors. They all told me that there were no open positions for my classification. I was told that a position couldn't even be made for me. So I was about to be terminated based on all the responses from the employees I discussed job openings.

I described the facts in this complaint to the best of my ability at this time and will continue to look for more information and will submit documents if I find other significant information. Thank You

*Michael Kennedy* (signature)

Michael Kennedy