IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MICHAEL A. KENNEDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CASE NO. 3:22-cv-645-RAH-JTA |
| ) | (WO) |
| STATE OF ALABAMA ) | |
| DEPARTMENT OF ) | |
| TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Plaintiff Michael A. Kennedy's "Motion to Require All Investigations and Discipline Actions of Plaintiff to Be Approved by Federal Judge Overseeing Case No. 3:22-CV-645-ECM-JTA" (Doc. No. 23), which the court previously construed as a motion for preliminary injunction (Doc. No. 25). On October 12, 2023, the court held a hearing on the motion. Upon consideration the motion, the parties' briefs and pre- and post-hearing evidentiary submissions, and the parties' representations in the hearing, for the reasons stated below, the undersigned RECOMMENDS that the motion for preliminary injunction (Doc. No. 23) be DENIED.

### I.   STANDARD OF REVIEW

A preliminary injunction is "[a] temporary injunction issued before or during a trial to prevent an irreparable injury from occurring before the court has a chance to decide the case." *Dixon v. Allen*, No. 406-CV-95 CDL, 2007 WL 676016, at *1 (M.D. Ga. Mar. 1, 2007) (quoting *Black's Law* 800 (8th ed. 2004)). A preliminary injunction is an

extraordinary and drastic remedy. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). The decision to grant or deny a preliminary injunction is within the sound discretion of the district court. *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if a plaintiff demonstrates: (1) a substantial likelihood of success on the merits; (2) irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Id.; McDonald's Corp.*, 147 F.3d at 1306. A preliminary injunction may not to be granted unless the moving party demonstrates all of these prerequisites. *See McDonald's Corp.*, 147 F.3d at 1306; *All Care Nursing Service, Inc. v. Bethesda Mem'l Hosp. Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989).

## II.  PROCEDURAL HISTORY

On November 2, 2022, *pro se* Plaintiff Michael A. Kennedy filed a Complaint against his employer, Defendant State of Alabama Department of Transportation ("ALDOT"). Kennedy alleged that ALDOT had subjected him to discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000h. Kennedy also alleged that ALDOT had violated his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654.

On April 3, 2023, Kennedy filed a "Motion to Require All Investigations and Discipline Actions of Plaintiff to be Approved by Federal Judge Overseeing Case No. 3:22-cv-645-ECM-JTA." (Doc. No. 23.) In that motion, Kennedy stated that, on March 31, 2023,

he received a letter from ALDOT placing him on leave without pay pending an investigation. (Doc. No. 23 at 1; Doc. No. 23-1.) He alleged that, because ALDOT gave him no reason for the investigation, it appeared that the investigation (and concomitant mandatory leave without pay) was retaliation against him for filing this lawsuit. He requested an order "requir[ing] Defendant to provide sufficient evidence to this said court in order to move forward with any investigations or discipline against Plaintiff while [this case] is active in this court." (Doc. No. 23 at 1.)

On April 6, 2023, the undersigned entered an Order construing Kennedy's April 3, 2023 motion as a motion for preliminary injunction and requiring ALDOT to show cause why the motion should not be granted. (Doc. No. 25.)

On April 26, 2023, a status conference was held in this case. On May 18, 2023, in compliance with an Order to do so (Doc. No. 29), Kennedy filed an Amended Complaint (Doc. No. 32). In the Amended Complaint, he alleged that ALDOT discriminated against him in violation of Title VII, violated the FMLA, and discriminated against him in violation of the ADA on the following occasions:

- On May 3, 2021, ALDOT put another employee, Sean Patterson, into the Project Manager supervisor position, rejecting Kennedy for that position on the basis of disability. ALDOT's District Manager allegedly told Kennedy he would not be a supervisor as long as she was District Manager. (Doc. No. 31-1 at 1.)

- On October 25, 2021, ALDOT allegedly disciplined Kennedy for taking five days off for medical reasons and for seeking to take those days off pursuant to the FMLA. Other employees took more days off during that time period, yet, allegedly,

  Kennedy was the only one with a medical disability and the only one disciplined for excessive absenteeism. (*Id*. at 2-3.)

- In November 2021, ALDOT allegedly removed FMLA hours from Kennedy. (*Id*. at 4.)

- In November 2021, ALDOT allegedly discriminated against Kennedy on the basis of disability by informing him he was not allowed to drive his work truck to his work station. (*Id*. at 4-5.)

- Beginning in December 2021, ALDOT allegedly changed Kennedy's work schedule to one that was more disadvantageous in response to Kennedy filing four grievances for discrimination. (*Id*. at 2.)

- In January 2022, ALDOT allegedly disciplined Kennedy for having an ADA accommodation agreement. (*Id*. at 5.)

- From February to March 2022, ALDOT allegedly continued to discriminate against Kennedy on the basis of disability by taking away his driving privileges. (*Id*. at 5.)

- In April 2022, ALDOT downgraded Kennedy's discrimination complaint to a grievance without any explanation. (*Id*.)

- On March 31, 2023, ALDOT allegedly retaliated against Kennedy by placing him on leave without pay while investigating reports of misconduct. This resulted in his loss of medical insurance on May 1, 2023. (*Id*. at 2-3.)

The motion for preliminary injunction (Doc. No. 23) concerns the last item on the above list. As best the court can discern from Kennedy's filings and representations at the

October 12, 2023 hearing, Kennedy seeks to be reinstated to his job with pay and benefits while the investigation is run by the court or while the investigation is paused pending the outcome of this suit, or to have the investigation stayed or called off entirely.

The parties have briefed the motion for preliminary injunction. (Docs. No. 26, 31.) On October 12, 2023, a hearing was held on the motion for preliminary injunction, after which the court ordered the parties to provide additional evidentiary submissions. (Doc. No. 44.) The parties provided the additional evidentiary submissions. (Docs. No. 45, 46.) The motion for preliminary injunction is now ripe for disposition.

### III.   RELEVANT FACTS[1]

---

[1] These facts are based on the parties' evidentiary submissions and, where appropriate, on the parties' uncontradicted representations at the October 12, 2023 hearing on the motion for preliminary injunction. Some pertinent facts are not included because they are potentially scandalous and wholly unnecessary to the disposition of the motion for preliminary injunction. At this stage of the litigation, no findings of fact have been made as to what actually happened in the bathroom in March 2023; therefore, the facts surrounding the incidents in the bathroom are presented in as little detail as possible to avoid unnecessarily scandalizing or stigmatizing any individual. Where necessary, however, the details are set forth. In addition, except where noted, these facts are undisputed (in the sense that no contradictory *evidence* has yet been adduced, regardless of whether any party has made *unsupported statements* disputing the other party's factual averments, and regardless of whether any party has stated a belief that further discovery may lead to contradictory evidence). Although "*evidence* that is received on the motion and that would be admissible at trial becomes part of the trial record," Fed. R. Civ P. 65(a) (emphasis added), discovery has not yet occurred, and no party is precluded from pursuing further discovery and providing evidence at trial that contradicts the evidence presented by the opposing party on the motion for preliminary injunction. *Pictet Overseas, Inc. v. Helvetia Tr*., No. 13-81088-CIV, 2014 WL 5034725, at *5 (S.D. Fla. Sept. 8, 2014), *order of the United States Magistrate Judge aff'd*, No. 13-81088-CIV, 2014 WL 12845127 (S.D. Fla. Oct. 17, 2014). It is well and long established that "[p]reliminary or tentative rulings do not establish law of the case" and "[r]ulings—predictions—as to the likely outcome on the merits made for preliminary injunction purposes do not ordinarily establish the law of the case."18 B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.5 Law of Case—Nature of the Ruling or Issues, 18B Fed. Prac. & Proc. Juris. § 4478.5 (3d ed. April 2023 update). *See also Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (observing that, except where the preliminary injunction hearing has been consolidated with a trial on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, "a preliminary injunction is customarily granted on the basis of

ALDOT currently employs Kennedy as a Graduate Civil Engineer within ALDOT's Southeast Region Office. (Doc. No. 26-1.) In March 2023, various ALDOT supervisors learned that on different occasions various employees reported they heard noises in the men's restroom that led them to believe that Kennedy was masturbating alone in a closed stall at work.[2] (Doc. No. 45-2 at 1, 4, 6.) The male employees reported what they had heard and seen and that the situation made them uncomfortable. (*Id*. at 4-5.)

Subsequently, the male employees' reports were communicated to ALDOT's Transportation Equal Employment Opportunity Unit Supervisor Undrea H. Campell. On March 28 and 29, 2023, Campbell interviewed witnesses and memorialized those interviews in memos. (Doc. No. 45-3.)

On March 30, 2023, ALDOT Region Engineer Steven C. Graben determined that the witness reports were sufficiently credible to warrant investigation and recommended that Kennedy be placed on mandatory leave without pay pending an investigation into whether the allegations were true. (Doc. No. 45-2 at 1-2, 6.) By letter dated March 30, 2023, Kennedy was placed on mandatory leave without pay effective March 31, 2023, and remains on mandatory leave without pay at this time. (Doc. No. 45-2 at 7.) The letter placing Kennedy on mandatory leave simply stated that Kennedy's "presence at the

---

procedures that are less formal and evidence that is less complete than in a trial on the merits;" thus, "a party … is not required to prove his case in full at a preliminary-injunction hearing … and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.").

[2] Kennedy denies the allegation and insists that the sounds that individuals heard were sounds of him having a bowel movement, as his medical disability causes pain with bowel movements and requires him to rub his stomach during such events. (Docs. No. 31, 46.)

worksite at this time is detrimental to work production." (*Id*.) It did not state the reason for the investigation.

On March 31, 2023, Graben and ALDOT Regional Office Manager Brenda Kirkland presented Kennedy with the letter placing him on leave without pay. (*Id*.; Doc. No. 46 at 2.) When Kennedy asked why he was being placed on leave without pay, Graben told Kennedy that he (Graben) "couldn't talk about it." (Doc. No. 46 at 2.) Graben and Kirkland then escorted Kennedy to his office to retrieve his personal belongings. (*Id*.) Though Graben told Kennedy that he would be able to keep his personal items, Graben forcibly took a notebook that belonged to Kennedy in which Kennedy had kept a log of his health issues. (*Id*. at 2-3.) Despite Kennedy's repeated requests that he be allowed to keep his health log, Graben refused. (*Id*. at 3.)

On April 3, 2023, at Graben's instruction, Kennedy met with Special Agent Jason Springfield, who returned the medical log and disclosed that he had reviewed the log. (*Id*.) Agent Springfield questioned Kennedy about personal topics related to Kennedy's sex life, pornography viewing habits (or lack thereof), and masturbating on work premises. (*Id*.) Kennedy explained his health issues. (*Id*. at 4.)

Agent Springfield then requested to view Kennedy's cell phone. (*Id*.) Kennedy allowed Agent Springfield to view the phone in his presence. (*Id*.) After Kennedy expressed confusion about why he was being questioned, Agent Springfield informed him about the allegations regarding masturbating in the workplace bathroom. (*Id*.) Agent Springfield stated that, if masturbation was done behind a closed stall door, it was alright

to do so, but Kennedy countered that masturbating in the workplace bathroom was not appropriate at all. (*Id*.)

Kennedy protested his innocence and affirmed his commitment to professionalism in the workplace. (*Id*.) Agent Springfield did not inform Kennedy of any rule violation and stated that he would have a report completed within two weeks. (*Id*. at 5-6.) After Kennedy filed his motion for preliminary injunction, ALDOT stayed its investigation pending a ruling on the motion. (Doc. No. 26 at 3.)

## IV. DISCUSSION

To be entitled to a preliminary injunction restoring him to active employment at his ALDOT job and either staying or cancelling ALDOT's investigation pending the resolution of this lawsuit, Kennedy must demonstrate a *substantial* likelihood of success on the merits of his claim that the investigation and associated mandatory leave are retaliatory. *See Palmer v. Braun*, 287 F.3d at 1329 (noting that a litigant "is not entitled to a preliminary injunction unless he establishes each of the following four prerequisites," including "a substantial likelihood of success on the merits").

When (as here) there is no direct evidence of the employer's retaliatory intent, Kennedy may demonstrate a *prima facie* case of retaliation under Title VII[3] by "prov[ing]

---

[3] The court makes no finding at this time whether Kennedy can state a retaliation claim under Title VII. The court notes, however, that Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin, but not on the basis of disability. 42 U.S.C.A. § 2000e-2(a)(1); *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1737, 207 L. Ed. 2d 218 (2020); *Harris v. Potter's House Fam. & Child. Treatment Ctr.*, No. 1:13-CV-2563-WSD, 2013 WL 5436775, at *1 (N.D. Ga. Sept. 27, 2013); *Counts v. DeJoy*, No. 8:22-CV-669-TPB-CPT, 2022 WL 2806826, at *4 (M.D. Fla. June 30, 2022), *report and recommendation adopted*, No. 8:22-CV-669-TPB-CPT, 2022 WL 2802885 (M.D. Fla. July 18, 2022) ("[The plaintiff's] apparent claim that he was subjected to unlawful discrimination under Title VII because of a disability is readily disposed of.

that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). After Kennedy establishes the elements of a *prima facie* claim, ALDOT "has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability." *Id*. Kennedy then "bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." *Id*. The elements of retaliation claims under the FMLA and the ADA are substantially the same. *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018) (same standard with respect to FMLA and ADA); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (same standard with respect to the FMLA).

Kennedy argues that ALDOT's retaliatory intent for the investigation (and for placing him on mandatory leave without pay pending investigation) can be inferred from (1) ALDOT's failure to provide him with a detailed reason for doing so at the time it placed him on mandatory leave and instigated the investigation and (2) the proximity in time between the March 30, 2023 initiation of the investigation and the then-operative April 17, 2023 deadline for Kennedy to file his Amended Complaint.[4] (Doc. No. 19.) Kennedy also criticizes the credibility of the witness testimony, although he does not contend that he did

---

It is well settled that Title VII does not cover discrimination based on disability, and that such allegations are therefore not actionable under that statute.").

[4] On April 14, 2023, the court continued Kennedy's deadline to file the Amended Complaint. (Doc. No. 27.)

9

not make the alleged noises that led the witnesses to believe he was masturbating alone in the closed stall; rather, he alleges that the noises were associated with painful bowel movements related to his disability.[5]

Assuming, without deciding, that Kennedy has made out a *prima facie* case of retaliatory intent, the court turns to ALDOT's reasons for the investigation (and the concurrent placement of Kennedy on leave pending the outcome of that investigation). ALDOT has presented evidence that it received unsolicited information from multiple employee witnesses who, based on their own personal observations, concluded that Kennedy was masturbating alone on several occasions in a closed stall in the men's restroom, and that this made the witnesses uncomfortable. (Docs. No. 45-1, 45-2.) ALDOT has also presented evidence that, prior to placing Kennedy on leave pending the outcome of the investigation, ALDOT interviewed the witnesses and determined that their concerns were credible enough to warrant further investigation. (*Id.*) In other words, ALDOT has articulated a legitimate, nondiscriminatory reason for its investigation and for placing Kennedy on mandatory leave without pay while it investigated the witnesses' allegations.

Therefore, Kennedy has the burden to show pretext – that is, that the reason ALDOT provided was false, *and* that retaliation was the real reason for the investigation and for his placement on mandatory leave pending that investigation. *Cf. St. Mary's Honor Ctr. v.*

---

[5] As for the credibility of the witnesses' allegations, ALDOT has not yet reached a final determination of the ultimate credibility of those allegations except to the extent of determining that the allegations are sufficiently credible to warrant further investigation. That is, ALDOT has made no decision whether to believe Kennedy's explanation for the noises the witnesses heard or whether to believe the witnesses' impression of what Kennedy was doing in the bathroom stall.

*Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be a pretext for *discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (internal quotation marks omitted; emphasis in original)). Kennedy has not, however, shown a substantial likelihood that he can prove that retaliation was the true motive for ALDOT's decision to investigate and to place him on mandatory leave without pay pending the outcome of that investigation, or that the reasons proffered by ALDOT were not its true reasons. *Batson*, 897 F.3d at 1329.

Kennedy's first basis for arguing that ALDOT's reason is pretext is that ALDOT did not initially provide him with a reason why it was placing him on mandatory leave without pay or adequately explain why it felt the investigation was necessary. Yet, ALDOT has since provided those reasons and those reasons are unrelated to any retaliatory (or discriminatory) motives. Specifically, prior to placing Kennedy on leave pending investigation, ALDOT received reports from several male employees that they were uncomfortable because they perceived noises (and other information) that led them to conclude that Kennedy was masturbating alone in a closed stall at the workplace while they were trying to use the restroom.[6] ALDOT's explanation comes quite some time after it placed Kennedy on leave, but the evidence ALDOT submitted shows that ALDOT received the reports from the witnesses and interviewed the witnesses very shortly before ALDOT placed Kennedy on leave. There is nothing here to suggest that ALDOT's initial silence

---

[6] To be clear, the employees tended to report that the sounds and noises had already begun before they entered the restroom, not that the noises started while they were in the process of using the restroom or that the noises seemed in any way to be related to their presence in the restroom.

11

regarding its reasons for the investigation was due to a retaliatory motive, or that ALDOT retroactively manufactured a reason for the investigation after having no legitimate, nonretaliatory justification for it in the first place.

Kennedy next challenges the credibility of the employee witnesses. Kennedy does not argue that the witnesses did not hear the noises they claim to have heard or see what they claim to have seen; he only contends that the witnesses were mistaken in concluding he was masturbating and that the witnesses' observations were instead attributable to Kennedy's painful bowel movements. Thus, Kennedy does not attack the witnesses' credibility as to their observations; he only takes issue with the inferences to be drawn from those observations. Based on ALDOT's evidentiary submission containing the substance of the witness interviews, the court finds that it would not have been unreasonable for the witnesses to have concluded that the noises they heard were masturbation, though it would also not be entirely unreasonable for Kennedy's explanation to be considered as well. Therefore, ALDOT does have a legitimate, nondiscriminatory basis to investigate whether what the witnesses perceived justifies the conclusion that Kennedy was masturbating in the men's bathroom, or whether something else was going on.

In addition, no evidence exists that ALDOT goaded the witnesses to come forward with their reports. Instead, the evidence shows that the employee witnesses came forward with their concerns without any invitation or coercion by ALDOT. Kennedy points to no evidence that the employee witnesses[7] themselves knew of Kennedy's lawsuit, disability,

---

[7] Kennedy states in a sworn statement: "I further note that the individuals involved in these retaliatory actions are also named in my discrimination complaint, showing a bias that is resulting

12

grievances, EEOC complaint, etc. In other words, there is no evidence that the witnesses were retaliating against Kennedy in violation of Title VII, the FMLA, or the ADA, or that the employee witnesses were operating as puppets to facilitate retaliation by ALDOT. Under the circumstances, it cannot be said that the witness testimony is so lacking in credibility as to indicate retaliatory intent on the part of ALDOT. Thus, Kennedy's attacks on the witnesses' credibility are not sufficient to establish a substantial likelihood that he will be able to prove ALDOT's motive for investigation was retaliatory or that ALDOT's proffered reason for the investigation is a lie.

What is left, then, is the roughly two-week time period between when ALDOT began its investigation and placed Kennedy on mandatory leave and the subsequent anticipated deadline for Kennedy to file his Amended Complaint. This time period, standing alone, is not enough to meet Kennedy's burden to demonstrate a substantial likelihood of carrying his burden to establish that ALDOT's action was retaliatory. *See Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1138 n.15 (11th Cir. 2020) (holding that, "[w]hile close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient" at the final stage of the *McDonnell Douglas*

---

in unfair treatment based on unsubstantiated accusations that can be attributed to my protected medical disability." (Doc. No. 46.) Kennedy's broadly general statement is not sufficient to establish that the witnesses themselves were involved in Kennedy's discrimination and retaliation claims, rather than the supervisory individuals who proceeded with the investigation and placed Kennedy on leave without pay. Kennedy cites no evidence or court filing showing that the witnesses themselves were named in any discrimination complaint. The employee witnesses are not named as defendants in this case.

framework); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("The close temporal proximity between Hurlburt's request for leave and his termination—no more than two weeks, under the broadest reading of the facts—is evidence of pretext, though probably insufficient to establish pretext by itself."); *Robinson-Miller v. Montgomery Cnty. Bd. of Educ.*, No. 2:18-CV-512-JTA, 2022 WL 13701300, at *10 (M.D. Ala. Oct. 21, 2022) (citing cases in concluding that "mere temporal proximity [approximately two weeks] between the protected FMLA activity and the adverse employment action," standing alone, was not sufficient to establish pretext where the employer had proffered a legitimate, nondiscriminatory reason for the adverse employment action); *Chavous v. City of Saint Petersburg*, 576 F. Supp. 3d 1040, 1062 n.5 (M.D. Fla. 2021) (notice of appeal filed January 20, 2022) ("If mere temporal proximity was enough to establish causation and to rebut the employer's asserted rationale, then it would collapse the *McDonnell Douglas* analysis into the *prima facie* case."); *see also McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005) ("The *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence.... It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship.").

The insufficiency of the two-week temporal relationship between the adverse employment action and the deadline for filing the Amended Complaint, standing alone, to establish pretext or to prove retaliatory intent is exacerbated by the fact that, here, an intervening event occurred between when ALDOT found out about the original Amended Complaint deadline and the occurrence of the deadline. Specifically, during the week of

14

March 20, 2023, ALDOT received several unprompted reports from employees who witnessed occurrences in the workplace bathroom that caused them to conclude that Kennedy was masturbating alone in the restroom stall, which made them uncomfortable, and ALDOT reacted promptly to those reports. (Docs. No. 45-1, 45-2.) Thus, if anything, the timing of ALDOT's investigation, with its close temporal proximity to the receipt of the employee reports of alleged misconduct, bolsters ALDOT's proffered purpose in initiating the investigation and placing Kennedy on mandatory leave. *Cf. Anyanwu v. Brumos Motor Cars, Inc.*, 496 F. App'x 943, 947 (11th Cir. 2012) (holding that, where the employer demonstrated that the plaintiff was terminated because of other employee's complaints of sexual harassment by the plaintiff, which occurred after the plaintiff allegedly engaged in protected conduct by protesting race discrimination, "the temporal proximity between [the plaintiff's discrimination] complaints and his termination does not alone suggest [the employer's] reasons were pretextual…. Rather, the proximity between the [other employee's complaints that the plaintiff had harassed them] and [the] termination indicates that [the employer's] reason was legitimate.").

Accordingly, Kennedy has not shown a substantial likelihood that he can satisfy his ultimate burden of proving retaliation by a preponderance of the evidence and that the reason ALDOT provided is mere pretext for prohibited retaliatory conduct. *Batson*, 897 F.3d at 1328; *Goldsmith*, 513 F.3d at 1277. Therefore, Kennedy is not entitled to a preliminary injunction intervening in or staying ALDOT's investigation or removing him from mandatory leave status. *Palmer*, 287 F.3d at 1329 ("[The movant] is not entitled to a

preliminary injunction unless he establishes each of the following four prerequisites," including "a substantial likelihood of success on the merits").

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION OF THE MAGISTRATE JUDGE that Kennedy's motion for preliminary injunction (Doc. No. 23) be DENIED.

It is further ORDERED that the parties shall file any objections to this Recommendation **on or before December 27, 2023**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Plaintiff is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 12th day of December, 2023.

_/s/ Jerusha T. Adams_
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE