IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. KENNEDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:22-cv-645-RAH-JTA |
| | ) | (WO) |
| STATE OF ALABAMA | ) | |
| DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is the Motion to Dismiss (Doc. No. 33) filed by Defendant State of Alabama Department of Transportation ("ALDOT"), which the court CONSTRUES as containing a motion to dismiss for lack of subject matter jurisdiction and a motion to dismiss for failure to state a claim upon which relief can be granted. Also before the court is Kennedy's Reply to Defendant's Motion to Dismiss (Doc. No. 38), which the court CONSTRUES as containing a motion for leave to amend the complaint. For the reasons stated below, the undersigned RECOMMENDS that ALDOT's motion to dismiss for lack of subject matter jurisdiction (Doc. No. 33) be GRANTED, that ALDOT's motion to dismiss for failure to state a claim upon which relief can be granted (Doc. No. 33) be GRANTED IN PART and DENIED IN PART as moot, and that Kennedy's motion to amend (Doc. No. 38) be GRANTED as specifically set forth below.

## I.   STANDARD OF REVIEW

A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Subject matter jurisdiction is the power of the court to hear a class of cases, which is conferred by statute. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503, 513 (2006). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016) (citation omitted). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514.

> The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "[f]ederal-question" jurisdiction, § 1332 for "[d]iversity of citizenship" jurisdiction. A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim "arising under" the Constitution or laws of the United States. *See Bell v. Hood*, 327 U.S. 678, 681–685 … (1946). She invokes § 1332 jurisdiction when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. *See* § 1332(a).

*Id.* at 513 (footnote omitted).

Motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) bring either "facial attacks"[1] or "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).

> Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. *Id*. at 1529. Factual attacks challenge subject

---

[1] This case involves a facial attack on subject matter jurisdiction.

2

matter jurisdiction in fact, irrespective of the pleadings. *Id*. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits. *Id*.

*Morrison v. Amway Corp*., 323 F.3d 920, 925 n.5 (11th Cir. 2003).

B.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claims

When evaluating a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed*, *Inc*., 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

Because it is not drafted by an attorney, the complaint of a *pro se* plaintiff must be liberally construed. *See Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). Nevertheless, the factual allegations in the complaint must state a plausible claim for relief, *Ashcroft*, 556 U.S. at 678, and the court is not "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Hopkins v. St. Lucie Cty. Sch. Bd*., 399 F. App'x 563, 565 (11th Cir. 2010) ("While

3

the pleadings of *pro se* litigants are liberally construed, they must still comply with procedural rules governing the proper form of pleadings." (internal citations and quotation marks omitted)). The complaint's factual allegations need not be detailed but "must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted); *see also Erickson*, 551 U.S. at 93 (applying *Twombly* to a pro se complaint). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. 662, 678; *see also Twombly*, 550 U.S. at 555 (holding that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Moreover, the leniency afforded the construction of *pro se* pleadings is not license for the court "'to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading . . . to sustain a cause of action." *Nails v. AmeriCredit*, No. CIV.A. 2:10CV826, 2011 WL 310254, at *1 (M.D. Ala. Jan. 6, 2011) (quoting *GJR Investments, Inc. v. County of Escambia, Fla*., 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)), *report and recommendation adopted*, No. 2:10CV826-MHT, 2011 WL 304790 (M.D. Ala. Jan. 28, 2011).

C.     Motion for Leave to Amend the Complaint

A district court's discretion to deny leave to amend a complaint is "severely restricted" by Fed. R. Civ. P. 15(a), which stresses that courts should freely give leave to amend "when justice so requires." *Woldeab v. Dekalb Cnty. Bd. of Educ*., 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir.

4

1988)). The policy of liberally favoring amendment exists to facilitate determination of claims on their merits, rather than allowing litigation to become a survival exercise in the technical points of pleading. *Davis v. Delta Air Lines, Inc.*, No. 18-25361-CIV, 2019 WL 13261027, at *2 (S.D. Fla. May 30, 2019) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. November 5, 1981)); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Despite Rule 15(a)'s "mandate" that leave to amend is to be freely given when justice requires, leave to amend *may* be denied for such reasons as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182.

Generally, a *pro se* plaintiff must be afforded "*at least one*" opportunity to amend the complaint if (1) the plaintiff does not clearly indicate a lack of desire to amend and (2) a more carefully drafted amended complaint might, with more specific allegations against the proper defendant, state a claim upon which relief could be granted. *Woldeab*, 885 F.3d at 1291 (emphasis added) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc) (overruling *Bank* only as to plaintiffs who are represented by attorneys). "In some situations, further leniency – or 'an extra dose of grace' – may be warranted 'in recognition of the difficulty in proceeding *pro se*.'" *Grant v. Sheriff of*

5

*Okeechobee Cnty.*, No. 22-11820, 2023 WL 2416262, at \*4 (11th Cir. Mar. 9, 2023) (unpublished opinion) (quoting *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132–33 (11th Cir. 2019)).

## II.    PROCEDURAL HISTORY

On November 3, 2022, *pro se* Plaintiff Michael A. Kennedy filed a Complaint against his employer, Defendant State of Alabama Department of Transportation ("ALDOT"). Kennedy alleged that ALDOT subjected him to discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000h. Kennedy also alleged that ALDOT had violated his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654.

On April 3, 2023, Kennedy filed a "Motion to Require All Investigations and Discipline Actions of Plaintiff to be Approved by Federal Judge Overseeing Case No. 3:22-cv-645-ECM-JTA." (Doc. No. 23.) In that motion, Kennedy stated that, on March 31, 2023, he received a letter from ALDOT placing him on leave without pay pending an investigation. (Doc. No. 23 at 1; Doc. No. 23-1.) He alleged that, because ALDOT gave him no reason for the investigation, it appeared that the investigation (and concomitant mandatory leave without pay) was retaliation against him for filing this lawsuit. He requested an order "requir[ing] Defendant to provide sufficient evidence to this said court in order to move forward with any investigations or discipline against Plaintiff while [this case] is active in this court." (Doc. No. 23 at 1.)

On April 6, 2023, the undersigned entered an Order construing Kennedy's April 3, 2023 motion as a motion for preliminary injunction and requiring ALDOT to show cause why the motion should not be granted. (Doc. No. 25.)

On April 26, 2023, a status conference was held in this case. On May 18, 2023, in compliance with an Order to do so (Doc. No. 29), Kennedy filed an Amended Complaint (Doc. No. 32). In the Amended Complaint, he alleged that ALDOT discriminated against him in violation of Title VII, violated the FMLA, and discriminated against him in violation of the ADA on the following occasions:

- On May 3, 2021, ALDOT put another employee, Sean Patterson, into the Project Manager supervisor position, rejecting Kennedy for that position on the basis of disability. ALDOT's District Manager allegedly told Kennedy he would not be a supervisor as long as she was District Manager. (Doc. No. 31-1 at 1.)

- On October 25, 2021, ALDOT allegedly disciplined Kennedy for taking five days off for medical reasons and for seeking to take those days off pursuant to the FMLA. Other employees took more days off during that time period, yet, allegedly, Kennedy was the only one with a medical disability and the only one disciplined for excessive absenteeism. (*Id*. at 2-3.)

- In November 2021, ALDOT allegedly removed FMLA hours from Kennedy. (*Id*. at 4.)

- In November 2021, ALDOT allegedly discriminated against Kennedy on the basis of disability by informing him he was not allowed to drive his work truck to his work station. (*Id*. at 4-5.)

7

- Beginning in December 2021, ALDOT allegedly changed Kennedy's work schedule to one that was more disadvantageous in response to Kennedy filing four grievances for discrimination. (*Id*. at 2.)

- In January 2022, ALDOT allegedly disciplined Kennedy for having an ADA accommodation agreement. (*Id*. at 5.)

- From February to March 2022, ALDOT allegedly continued to discriminate against Kennedy on the basis of disability by taking away his driving privileges. (*Id*. at 5.)

- On March 31, 2023, ALDOT allegedly retaliated against Kennedy by placing him on leave without pay while investigating reports of misconduct. This resulted in his loss of medical insurance on May 1, 2023. (*Id*. at 2-3.)

The motion for preliminary injunction (Doc. No. 23) concerned the last item on the above list. As best the court can discern from Kennedy's filings and representations at the October 12, 2023 hearing, by moving for a preliminary injunction, Kennedy seeks to be reinstated to his job with pay and benefits while the investigation is completed by the court or while the investigation is paused pending the outcome of this suit, or to have the investigation stayed or called off entirely.

On October 12, 2023, a hearing was held on the motion for preliminary injunction, after which the court ordered the parties to provide additional evidentiary submissions. (Doc. No. 44.)  The parties provided the additional evidentiary submissions. (Docs. No. 45, 46.)  On November 22, 2023, the undersigned entered a Recommendation that the motion for preliminary injunction be denied. (Doc. No. 47.) However, on December 12, 2023, after reviewing the parties' objections, and to clarify confusion on Defendant's part

as to the import of findings of fact at the preliminary injunction stage, the undersigned withdrew the Recommendation and reissued a Recommendation that was identical except for added material in a footnote designed to clarify that findings of fact at the preliminary injunction stage did not preclude discovery and further litigation on those same factual issues. (Docs. No. 50, 51.) On December 27, 2023, Kennedy objected to the reissued Recommendation. (Doc. No. 52.) That Recommendation and Kennedy's objections are now pending before the United States District Judge.

The undersigned now turns to Defendant's motion to dismiss (Doc. No. 33), which is ripe for disposition.

## III.   RELEVANT FACTS[2]

---

[2] No party should interpret this statement of facts as precluding discovery or further litigation on any point of fact mentioned herein. The court makes no findings of fact at the motion to dismiss stage. Instead, these facts are as alleged in the Amended Complaint, generously construing the Amended Complaint in the light most favorable to the *pro se* Plaintiff, as is appropriate at this stage of the litigation. *See Resnick*, 693 F.3d at 1321–22 (noting that, at the motion to dismiss stage, "[w]e state the facts as alleged in the Complaint, accept them as true, and construe them in the light most favorable to" the plaintiffs); *Douglas*, 535 F.3d at 1320 (stating that the plaintiff's "complaint is construed liberally because he filed it *pro se*"). Further, only where appropriate, documents attached to the original Complaint (Doc. No. 1) or other documents have been used as sources in drafting this Section of this Recommendation. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims."); *Sprengle v. Smith Mar. Inc.*, 660 F. Supp. 3d 1337, 1350 (M.D. Fla. 2023) ("[C]ourts may consider evidence extrinsic to the pleadings on a Rule 12(b)(6) motion to dismiss if (1) the documents are referred to in the complaint; (2) the evidence is central to the plaintiff's claim; and (3) the evidence's authenticity is not in question." (collected citations omitted)). However, as discussed in more detail in Section IV of this Recommendation, despite ALDOT's invitation to do so, where Kennedy attached documents to his original Complaint while also contesting the veracity of those documents, or where it would otherwise be inappropriate to consider documents attached to the original Complaint, the court has not relied on those documents in setting forth the relevant facts or in ruling on the Motion to Dismiss. *See Hoefling*, 811 F.3d at 1277 ("[O]ur cases do not permit a

Kennedy is an engineer employed by ALDOT. (Docs. No. 1, 26-1.)

On September 6, 2018, Kennedy and ALDOT entered into "an ADA agreement" in which ALDOT provided him certain accommodations under the ADA for Meniere's disease. (Doc. No. 32-1 at 4, 6.)

In early May 2021, Rebekah Crawford, a District Manager for ALDOT, put Shawn Patterson in the supervisory position of Project Manager[3] instead of Kennedy because of Kennedy's medical disability. (*Id*. at 1.) She told Kennedy that she did this because of Kennedy's medical disability and that Kennedy would "never advance to a supervisor position as long as she was District Manager." (*Id*.)

On August 13, 2021, Kennedy received an email from Crawford stating that he had been approved for FMLA leave for four days: June 22, 2021 (1 hour), June 28, 2021 (2 hours), July 12, 2021 (3 hours), and July 22, 2021 (2 hours). (*Id*. at 3.) The approval was backdated to June 16, 2021. (*Id*.) At some point, Kennedy was denied the use of FMLA on June 30, 2021 and July 15, 2021, "even though Supervisor Taylor Oliver was told in person" that Kennedy had needed to use FMLA leave on those dates. (*Id*. at 4.)

---

district court to consider, on a motion to dismiss, exhibits attached to an earlier complaint that a plaintiff has expressly disavowed or rejected as untrue in a subsequent amended complaint."); *see also Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009) (unpublished opinion) (acknowledging that, although an amended complaint supersedes the original complaint in the sense that "specific claims made against particular defendants in the original complaint are not preserved unless they are also set forth in the amended complaint," nevertheless,"[a] district court ruling on a motion to dismiss is not required to disregard documents that the plaintiff himself filed with his original complaint" where the plaintiff "did not assert that those documents should not be considered or that the facts contained in them had changed or were incorrect"). As appropriate, nonmaterial, undisputed facts from other evidentiary submissions may also be provided here for background information only.

[3] "A project manager position is a supervisor position that gives orders to inspectors instead of takes orders." (Doc. No. 32-1 at 1.)

On October 25, 2021, Taylor Oliver disciplined Kennedy for taking five days off for medical reasons and for seeking to take those days off pursuant to the FMLA. (*Id*. at 2-3.) Other employees took more days off during that same time period; however, Kennedy was the only one with a medical disability and the only one disciplined for excessive absenteeism. (*Id*. at 2-3.) In addition, Oliver disciplined Kennedy for having an ADA agreement for his medical disability. (*Id*. at 4.)

In November 2021, ALDOT "took away" hours of FMLA leave from Kennedy. (*Id*. at 4.) Kennedy had not used those hours for FMLA or used them for an approved disability, nor had he approved those hours being "taken away." (*Id*.)

On November 18, 2021, ALDOT required Kennedy to move his work truck to his work station in Opelika, which Kennedy alleges was discriminatory on the basis of disability. (*Id*. at 4-5.)

On December 1, 2021, Kennedy filed four grievances, though the basis of those grievances is not stated in the Amended Complaint. (*Id*. at 2.)

In December 2021, Crawford and Oliver allegedly retaliated against Kennedy by giving him a less desirable work schedule than all other similarly situated employees, requiring him to be the only one working with contractors before 7:00 a.m. and after 4:00 p.m. (*Id*.) The normal workday was from 7:00 a.m. to 4:00 p.m. (*Id*.)

In March 2022, through Undrea Campbell, in order to remove Kennedy from his work position, ALDOT discriminated against Kennedy by convincing Kennedy's doctor, Dr. Blankenship, to submit a form to ALDOT stating that Kennedy was no longer medically safe to drive. (*Id*. at 5.) On March 28, 2022, Campbell spoke to a nurse at Dr.

Blankenship's office about providing the form and someone from Dr. Blankenship's office did provide ALDOT a form stating Kennedy could not drive. (*Id.*) Kennedy had seen Dr. Blankenship nineteen times between April 2019 and May 2022, and Dr. Blankenship never restricted his driving during that time. (*Id.*) On May 18, 2022, Dr. Blankenship again stated in a letter that Kennedy was capable of driving. (*Id.*) Kennedy submitted the letter to Campbell, but, receiving no response from her, he signed a transfer order out of fear of being fired. (*Id.*) In August 2022, Kennedy went to another doctor who changed Kennedy's diagnosis, and Kennedy was able to use the new diagnosis to convince Campbell to remove Kennedy's driving restrictions at work. (*Id.*)

On April 22, 2022, Kennedy filed an EEOC charge of discrimination and retaliation. (Doc. No. 1-50 at 7-10.) On August 5, 2022, the EEOC issued a determination letter and notice of right to sue. (Doc. No. 1-50; Doc. No. 32 at 5.)

On November 3, 2022, Kennedy filed this action. (Doc. No. 1.)

On March 31, 2023, ALDOT allegedly retaliated against Kennedy by placing him on mandatory leave pending the results of an investigation "without stating the reason for the investigation or stating any possible violations." (Doc. No. 32-1 at 2-3.) Kennedy's status of being on leave without pay resulted in the loss of his medical insurance benefits for himself and his family, which caused serious illness in the family. (*Id.*)

## IV.   DISCUSSION

A.    Title VII Claims

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin, but not on the basis of disability. 42 U.S.C.A. § 2000e-2(a)(1); *Bostock v.*

*Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1737 (2020); *Harris v. Potter's House Fam. & Child. Treatment Ctr.*, No. 1:13-CV-2563-WSD, 2013 WL 5436775, at *1 (N.D. Ga. Sept. 27, 2013). Title VII also prohibits employers from retaliating against employees for opposing discrimination on the basis of race, color, religion, sex, or national origin, but does not prohibit retaliation on the basis of opposing disability discrimination or for exercising FMLA rights. 42 U.S.C.A. § 2000e-3 (a); *White v. DeJoy*, No. CV 19-00116-TFM-B, 2021 WL 851001, at **6-7 (S.D. Ala. Feb. 8, 2021) (explaining that Title VII's anti-retaliation provision prohibits retaliation for opposing practices relating to discrimination prohibited by Title VII, *i.e.*, discrimination based on race, color, religion, sex, or national origin, and concluding that, "[b]ecause the activities on which [the plaintiff] relies to establish the protected activity element of his retaliation claim do not constitute statutorily protected activity under Title VII, he has failed to establish a prima facie case of retaliation or retaliatory hostile work environment in violation of Title VII"), *report and recommendation adopted*, No. 1:19-CV-116-TFM-B, 2021 WL 849984 (S.D. Ala. Mar. 5, 2021).

Kennedy's Amended Complaint alleges only discrimination and retaliation based on disability and FMLA-related activity. Under even the most generous construction, his complaint contains no allegations of discrimination or retaliation that plausibly fall under Title VII. Accordingly, Kennedy's Title VII claims are due to be dismissed with prejudice. *See Counts v. DeJoy*, No. 8:22-CV-669-TPB-CPT, 2022 WL 2806826, at *4 (M.D. Fla. June 30, 2022), *report and recommendation adopted*, No. 8:22-CV-669-TPB-CPT, 2022 WL 2802885 (M.D. Fla. July 18, 2022) ("[The plaintiff's] apparent claim that he was

subjected to unlawful discrimination under Title VII because of a disability is readily disposed of. It is well settled that Title VII does not cover discrimination based on disability, and that such allegations are therefore not actionable under that statute.").

B.    FMLA Claims

The FMLA guarantees eligible employees up to a total of twelve workweeks of leave during any twelve-month period for several reasons, including "(C) [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition" and "(D) [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of the employee." 29 U.S.C. § 2612(a)(1)(C), (D). *Kagy v. Gwinnett Cnty., Ga.*, No. 119-cv-01311-WMR-RDC, 2020 WL 5548778, at *5 (N.D. Ga. Aug. 10, 2020), *report and recommendation adopted*, No. 1:19-CV-01311-WMR, 2020 WL 7396003 (N.D. Ga. Sept. 29, 2020). "The United States Supreme Court has referred to subpart (C) as a 'family-care' provision and subpart (D) as the 'self-care' provision." *Id*. (citing *Coleman v. Ct. of App. of Md.*, 566 U.S. 30, 34 (2012) (quoting 29 U.S.C. §§ 203(x), 2611(4)(A)(iii))).

The FMLA prohibits employers from interfering with, restraining, or denying the right to FMLA leave and from retaliating against individuals for opposing any practice made unlawful by the FMLA. 29 U.S.C. § 2615(a). "The Act does not clearly delineate these violations with the labels, 'interference' and 'retaliation,' but courts use these terms in describing the two types of employee claims arising under the Act." *Id*. (citing *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001)). The court will analyze Kennedy's FMLA retaliation and interference claims separately.

14

1.    FMLA Retaliation Claims

To state an FMLA retaliation claim, Kennedy must state facts that, if true, demonstrate "that his employer intentionally discriminated against him for exercising an FMLA right." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008). Where, as here, a plaintiff seeks to allege an FMLA retaliation claim based on circumstantial evidence of the employer's motive, the plaintiff must "allege sufficient facts to plausibly suggest that: '(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) that the decision was causally related to the protected activity.'"[4] *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015) (quoting *Strickland*, 239 F.3d at 1206–07).

It is not clear from the Amended Complaint whether Kennedy asserts his FMLA retaliation claims pursuant to the FMLA's family care provisions, or whether the asserts his claims pursuant to the FMLA's self-care provisions. However, construing Kennedy's Amended Complaint in the light most favorable to him, he contends that ADOT retaliated against him for taking time off work that was covered by (and that ALDOT had approved for) FMLA on the following dates: June 22, June 28, July 12, and July 22, 2021. (Doc. No. 32-1 at 3-4.)

---

[4] There may be other ways to state a circumstantial case of intentional retaliation. *Hogancamp v. Cnty. of Volusia*, 316 F. Supp. 3d 1354, 1357–58 (M.D. Fla. 2018) (explaining that a plaintiff need not allege a *prima* facie case of FMLA retaliation to state a claim at the motion to dismiss stage, but that the plaintiff must "provide sufficient facts, taken as true, to support a reasonable inference that the defendant discriminated against [him] for exercising h[is] FMLA rights" (citing *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011)). However, Kennedy has not suggested that he can state a retaliation claim in some other way, and his Amended Complaint contains no indication that he can.

Specifically, Kennedy alleges that, on August 13, 2021, Crawford emailed him to inform him that he had been approved for intermittent FMLA leave. (Doc. No. 32-1 at 3; Doc. No. 1-10 at 1.[5]) He alleges that "FMLA approval was backdated to June 16, 2021." (Doc. No. 32-1 at 3.) After receiving approval from Crawford for intermittent FMLA leave, on August 24, 2021, Kennedy "emailed Stephanie Henderson about past dates approved for FMLA." (*Id.*) The August 24, 2021 email upon which Kennedy relies in his Amended Complaint is attached to his original Complaint. In it, he inquired if he "need[ed] to send [Henderson] the days starting from June 16th that [he] needed to use the FMLA for lost work time." (Doc. No. 1-11 at 1.) Henderson responded: "You can if you have them." (*Id.*) Kennedy then provided Henderson with a list of a total of eight hours of leave from June

---

[5] An amended pleading supersedes the original pleading. *Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc*., 65 F.4th 667, 676 (Fed. Cir. 2023). Thus, as a general principle, "in considering an amended complaint, [the court] should not consider the now 'abandoned' original complaint and its attachments." *id*. Therefore, unless an exception to this principle applies, in ruling on the motion to dismiss, the court will not rely on any of the evidence previously submitted in the case or on any of the hundreds of pages of documents attached to Kennedy's original Complaint. One applicable exception is that, without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment, the court may rely on a document that is not attached to the Amended Complaint so long as the plaintiff references or relies on the document in the amended pleading, the document is central to the plaintiff's claim, its authenticity is uncontested, and the plaintiff does not contend that its contents are untrustworthy. *See id*. (recognizing that a court "may consider a document outside the pleadings and treat it as part of the pleadings for purposes of Rule 12(b)(6) if the document is … undisputed" and "central to the plaintiff's claim" (*i.e.* the document's "contents are at the very heart of the dispute" (citations and internal quotation marks omitted)); *see also Hoefling*, 811 F.3d at 1277 ("[O]ur cases do not permit a district court to consider, on a motion to dismiss, exhibits attached to an earlier complaint that a plaintiff has expressly disavowed or rejected as untrue in a subsequent amended complaint."); *Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1368 (11th Cir. 1997) (noting that "the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto," yet, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment").

22 and 28 and July 12 and 22, 2021. (*Id*.) According to Kennedy, on October 25, 2021, ALDOT "present[ed] discipline documents" that disciplined him for "taking FMLA leave on [those] four days." (*Id*.) The "discipline documents" to which Kennedy refers and on which he relies in his Amended Complaint were appended to the original Complaint and purport to discipline Kennedy for excessive absences, tardiness, and falsification of records of his work hours. (Doc. No. 1-12 at 1-2.) Construing Kennedy's Amended Complaint in the light most favorable to him, it appears that he is alleging that the reasons stated in the "discipline documents" as the basis for discipline were pretextual and that he was instead being retaliated against for taking FMLA leave on four different days in June and July 2021.

ALDOT argues that Kennedy cannot state an FMLA retaliation claim because he does not allege that he engaged in an FMLA-protected activity. However, as Kennedy alleges he did, "[w]hen an employee requests time off or provides notice to his employer of his need to take time off for a serious health condition, he engages in statutorily protected activity under the FMLA." *Walker v. United Parcel Serv., Inc*., No. 21-11267, 2022 WL 10083816, at *3 (11th Cir. Oct. 17, 2022). ALDOT argues that Kennedy's leave request was not sufficient to trigger the FMLA's requirement because Kennedy allegedly did not indicate that he was taking time off for a serious health condition *at the time he took the leave*. In support of this argument, ALDOT cites 29 C.F.R. § 825.303(b), which provides:

> An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request.... When an employee seeks leave for the first time for a FMLA–qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. When an employee seeks leave due to a qualifying

17

reason, for which the employer has previously provided the employee FMLA–protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave. Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act. The employer will be expected to obtain any additional required information through informal means. An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA–qualifying. Failure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA–qualifying.

Kennedy does not specifically allege that he initially requested leave in accordance with the provisions of § 825.303(b), nor does ALDOT explain why Rule 8(a) of the Federal Rules of Civil Procedure (or other controlling authority) compels him to do so. However, based on the alleged facts and the documents upon which Kennedy relies in stating his FMLA retaliation claim in the Amended Complaint, it appears that Kennedy *did* timely[6] and adequately communicate the need and basis for FMLA leave, not least because Crawford informed him that *he had been approved for FMLA leave.* In fact, in Kennedy's

---

[6] Citing 29 C.F.R. § 825.303(b), ALDOT argues also that Kennedy was required to provide ALDOT with notice of the need to take FMLA leave "at the time leave was taken." That is not exactly what 29 C.F.R. § 825.303(b) says. Further, code sections that ALDOT *did not cite in its motion to dismiss* contain provisions governing the proper timing of requests for unforeseeable and foreseeable leave. 29 C.F.R. § 825.302 (stating that 30 days' notice is required for foreseeable leave, unless that is not possible, in which case advance notice must be provided "as soon as practicable," and further stating that an employer may require an employee to comply with the employer's usual and customary notice and procedural requirements); 29 C.F.R. § 825.302(a),(d) (stating "[w]hen the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case," and further stating that an employer may require an employee to comply with the employer's usual and customary notice and procedural requirements). Kennedy does not state in his Amended Complaint whether he foresaw the need to take FMLA leave or when he knew he needed to take it. Given that, during June and July 2021, Kennedy was apparently waiting for approval for FMLA leave and then, once FMLA leave was approved, Kennedy provided notice of FMLA leave with ALDOT's permission, ALDOT has failed to explain why Kennedy's notice was untimely under the relevant code sections, which ALDOT did not cite.

EEOC charge, to which ALDOT cites in other portions of its motion to dismiss,[7] Kennedy indicates that, in *May 2021*, Campbell directed him to complete the necessary paperwork to request intermittent FMLA leave, which he "subsequently did." (Doc. No. 1-50 at 8.) Crawford notified Kennedy in August 2021 that his FMLA leave request had been approved. On August 13, 2021, Crawford emailed him to inform him that he had been approved for FMLA leave. (Doc. No. 32-1 at 3; Doc. No. 1-10 at 1.) Thereafter, on August 24, 2021, Kennedy emailed Stephanie Henderson, who allowed him to indicate that certain leave hours on days in June and July 2021 had been taken for FMLA-related reasons. (Doc. No. 32-1 at 3; Doc. No. 1-11 at 1.) Thus, at this stage of the litigation, construing Kennedy's allegations in the light most favorable to him, it is reasonable to infer that Kennedy requested intermittent FMLA leave before June 2021, received approval in August 2021, and then ALDOT directed him to provide the dates of FMLA leave that he had taken while waiting for FMLA leave approval, which he did. ALDOT has not at this time demonstrated how such a scenario *per se* violates 29 C.F.R. § 825.303(b).

Accordingly, contrary to ALDOT's argument[8] that Kennedy did not timely indicate that he needed FMLA leave, it is reasonable to infer from the Amended Complaint and

---

[7] *See Little v. CRSA*, No. 1:17CV126-CSC, 2017 WL 3431837, at *2 n.4 (M.D. Ala. Aug. 9, 2017), *aff'd*, 744 F. App'x 679 (11th Cir. 2018) (noting that an EEOC charge could properly be considered on a motion to dismiss where it was central to the plaintiff's complaint, the plaintiff relied on it in opposition to the motion to dismiss, and the plaintiff did not dispute the contents or authenticity of the EEOC charge). The court notes the contents of the EEOC charge not *sua sponte*, but because, at ALDOT's invitation, the court reviewed the EEOC charge.

[8] Citing Kennedy's allegations regarding his August 2021 correspondence with Henderson, ALDOT argues that "Kennedy acknowledged in his Complaint that he notified ALDOT after the fact of dates in the past that he believed should have been counted as FMLA" leave. (Doc. No. 33 at 10 (citing Doc. No. 32-1 at ¶ 8).) Construing the allegations of the Amended Complaint in the light most favorable to Kennedy, he does not allege that *he* submitted an after-the-fact request for

from the emails upon which Kennedy relied in the Amended Complaint that Kennedy adequately requested FMLA leave. *See FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (explaining that, on a motion to dismiss, the court accepts the factual allegations in the complaint as true and *construes all reasonable inferences from those facts in the light most favorable to the plaintiff*). A more carefully drafted complaint might well contain more detailed allegations demonstrating that Kennedy timely and adequately notified ALDOT of his desire to take FMLA and, thus, might well more clearly state a claim for FMLA retaliation.[9]

ALDOT suggests that Kennedy has not adequately alleged that ALDOT retaliated against him because of an FMLA-protected activity, since the disciplinary reprimand ALDOT provided Kennedy did not specifically state that he was being disciplined for requesting FMLA leave. *Surtain*, 789 F.3d at 1247 (recognizing that, to state a claim of FMLA retaliation, the employee must allege that the employer retaliated because the employee engaged in FMLA-protected action). Specifically, ALDOT argues that, "in Kennedy's EEOC charge, he acknowledged that the discipline was a reprimand for absenteeism, tardiness, and falsification of records." (Doc. No. 33 (citing Doc. No. 1-50 at

---

FMLA leave. He merely alleges that Crawford *responded* to his request for FMLA leave with a "backdated" *approval* and then he "emailed Stephanie Henderson about past dates approved for FMLA." (Doc. No. 32 at 3.) Again, at this juncture, the court is limited to considering the allegations in Kennedy's Amended Complaint and such documents as may also be considered on a motion to dismiss; ALDOT is not precluded from pursing discovery about or contesting the adequacy of Kennedy's FMLA leave request at a future appropriate point in this litigation.

[9] Nothing in this Recommendation precludes discovery as to the issue of Kennedy's entitlement to FMLA leave, nor is ALDOT precluded from challenging the adequacy of any notice he provided to ALDOT on a future motion to dismiss or motion for summary judgment, or at trial or other appropriate junction in this case.

8 and Doc. No. 1-12).) *See Key v. Hyundai Motor Mfg., Ala., LLC*, No. 2:19-CV-767-ECM, 2021 WL 3909663, at *4 n.3 (M.D. Ala. Aug. 31, 2021) (noting that, without converting a motion to dismiss to a motion for summary judgment, a court may consider an EEOC charge not attached to an amended complaint where, as here, the plaintiff references the EEOC charge in the amended complaint, the charge is central to the plaintiff's claims, and the plaintiff does not dispute the contents or authenticity of the EEOC charge). In Kennedy's EEOC charge, he does acknowledge that the absenteeism, tardiness, and falsification of records were ALDOT's *stated* reasons for the reprimand, but he does not agree that those were ALDOT's *actual* reasons for the reprimand. (Doc. No. 1-50 at 8.) He also makes clear his contention that the ALDOT's reprimand "alleging" absenteeism, tardiness, and falsification of records was actually retaliatory and pretextual. (*See* Doc. No. 1-50 at 8-9 (Kennedy's allegation that the reprimand was "retaliatory adverse action" that disciplined him for attendance issues related to his disability and for conduct that had previously been approved by a supervisor).) Again, taking the allegations of the Amended Complaint and any documents that may be considered on a motion to dismiss in the light most favorable to Kennedy, as the court must at this stage of the litigation, Kennedy has adequately alleged that the discipline was motivated by retaliation.

ALDOT also argues that, because Kennedy's reprimand did not itself penalize him with loss of pay or suspension without pay, Kennedy does not adequately allege that he was subjected to an adverse employment action. *See Surtain*, 789 F.3d at 1247 (recognizing that, to state a claim of FMLA retaliation, the employee must allege that the employer subjected the employee to an adverse employment action because the employee engaged

in FMLA-protected action). In support of this position, ALDOT cites *Mitchell v. Snow*,

326 F. App'x 852 (5th Cir. 2009),[10] in which the Court of Appeals for the Fifth Circuit

---

[10] ALDOT also cites (Doc. No. 33 at 11) the "ultimate employment decision" standard set out in *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), which the Fifth Circuit subsequently abrogated after ALDOT filed its brief in support of its motion to dismiss, *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. August 18, 2023), and which has not been the standard in the Eleventh Circuit. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (collecting cases and explaining that, "in the past, this circuit's standard for both [Title VII] discrimination and retaliation claims has required an employee to establish an ultimate employment decision' *or make some other showing of substantiality* in the employment context in order to establish an adverse employment action," thus effectively differentiating the "past" Eleventh Circuit standard from the stricter one used in the Fifth Circuit, and holding that a less-than-favorable performance review could constitute an adverse employment action in a Title VII retaliation case where the performance review prevented the plaintiff from receiving a pay raise (emphasis added)); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998) (rejecting the Fifth Circuit's "ultimate employment decision" standard and stating: "We join the majority of circuits which have addressed the issue and hold that Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions.").

The Fifth Circuit made clear in *Mitchell* that, even under *McCoy*, what was left at the time of the Fifth Circuit's "ultimate employment decision test" did *not* apply to Title VII *retaliation* claims, but did apply to Title VII *discrimination* claims. *Mitchell*, 326 F. App'x at 855; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006) (resolving a Circuit split regarding the meaning of the statutory term "discriminate against" for purposes of Title VII retaliation claims and adopting a test different than the "ultimate employment decision standard" then used by the Fifth and Eighth Circuits).

Even so, in applying *McCoy's* "ultimate employment decision" test to a Title VII *discrimination* claim, the *Mitchell* court held that a less-than-favorable review "*itself, standing alone*, plainly does not meet the ultimate-employment-decision test." *Mitchell*, 326 F. App'x at 855 (emphasis added). The *Mitchell* court separately considered and rejected the plaintiff's argument that her less-than-favorable review met the "ultimate employment decision" standard because it prevented her from receiving a step raise. The court rejected that argument on the facts of the case, not in theory, reasoning that there simply was no evidence on summary judgment that the performance review bore a causal relationship to the failure to receive a step increase and, therefore, the plaintiff had failed to objectively show that the allegedly discriminatory performance review had resulted in a loss of pay.

It is notable that, even under *McCoy's* stricter (and since abandoned) "ultimate employment decision" test, the *Mitchell* court still made sure to distinguish in its analysis between mere receipt of a less-than-favorable review, "standing alone," and the plaintiff's contention that the less-than-favorable review caused her not to receive a step increase in salary. That analysis in *Mitchell* indicates that applying the "ultimate decision test" to Kennedy's FMLA retaliation claims in derogation of controlling Eleventh Circuit law (as ALDOT suggests) still would not result in

held that *merely* receiving a less-than-desirable performance review did not amount to an adverse employment action for purposes of a Title VII retaliation claim. In *Mitchell*, however, the court made clear that the less-than-desirable performance review at issue was not one that resulted in a loss of compensation, duties, or benefits. *Mitchell*, 326 F. App'x at 855. Here, by contrast, in the very pages of the EEOC charge ALDOT cited when arguing that Kennedy's reprimand was for non-FMLA-related conduct,[11] Kennedy also asserted that, "[d]ue to this retaliatory adverse action [*i.e*, the reprimand], [he] was denied an annual pay increase … [he] otherwise would have received." (Doc. No. 1-50 at 8-9.)

Accordingly, it appears a more carefully drafted complaint might clearly state facts supporting Kennedy's position that he was subjected to a retaliatory adverse action. *Cf. Barnett v. Athens Reg'l Med. Ctr. Inc*., 550 F. App'x 711, 713, 715 (11th Cir. 2013) (unpublished opinion) (holding that reprimands were not adverse employment actions for purposes of Title VII and ADEA discrimination and retaliation claims because there was no evidence that the reprimands led to a material change in the employee's terms or conditions of employment, such as denial of a merit pay increase, and "nothing in the record showed that these acts were materially adverse in that they would have affected any future pay raise or his future job status in any way"); *Edwards v. Nat'l Vision Inc*., 568 F.

---

dismissal of Kennedy's FMLA retaliation claim where, as here, Kennedy alleges that his reprimand resulted in his failure to receive a pay raise.

[11] The court did not *sua sponte* search for and discover Kennedy's allegation that his reprimand caused him not to receive a raise. ALDOT *itself* invited the court to review that portion of the EEOC charge in support of its motion to dismiss. Having followed ALDOT's invitation, the court cannot close its eyes to what is written there, particularly in light of the need to consider Kennedy's *pro se* situation when construing the allegations of his Amended Complaint at the motion to dismiss stage and in considering his motion to amend.

App'x 854, 861-622 (11th Cir. 2014) (unpublished opinion) (holding that, although "lower scores on her Performance Appraisal, which resulted in a smaller raise" *could* constitute adverse action, the plaintiff could not prevail on her FMLA retaliation claim because she did not provide sufficient evidence of causal connection between the adverse action and the exercise of FMLA rights); *Crawford v. Carroll*, 529 F.3d 961, 971-74 (11th Cir. 2008) (holding that a poor performance evaluation that directly resulted in the denial of a merit pay raise affected the employee's compensation and thus constituted an adverse employment action under Title VII, even where the employer had retroactively provided the pay raise); *Gillis v. Georgia Dep't of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005) ("We hold that an evaluation that directly disentitles an employee to a raise of any significance is an adverse employment action under Title VII.").

Yet, as ALDOT argues, Kennedy's FMLA retaliation claims against ALDOT under the FMLA's self-care provisions are subject to dismissal for lack of subject matter jurisdiction because they are barred by sovereign immunity in accordance with the Eleventh Amendment of the United States Constitution. *Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1294 (11th Cir. 2023) ("'An assertion of Eleventh Amendment immunity essentially challenges a court's subject matter jurisdiction.'" (quoting *Seaborn v. Fla. Dep't of Corrs.*, 143 F.3d 1405, 1407 (11th Cir. 1998)); *Coleman*, 566 U.S. 30, 33 ("hold[ing] that suits against States under [the FMLA's self-care] provision are barred by the States' immunity as sovereigns in our federal system"); *Garrett v. Univ. of Ala. Bd. of Trs.*, 193 F.3d 1214, 1219 (11th Cir. 1999) ("[W]e hold in this case that Congress did not have the authority to abrogate the sovereign immunity of the states on claims arising under

the [the self-care provision] at issue here."), *rev'd on other grounds, Bd. of Trs. Of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001); *Batchelor v. S. Fla. Water Mgmt. Dist.*, 242 F. App'x 652, 653 (11th Cir. 2007) (unpublished) (affirming *Garrett's* post-*Hibbs*[12] validity and stating, "[o]ur holding in *Garrett* that Congress is without authority to abrogate state sovereign immunity for claims arising under the self-care provision of the FMLA remains the law of this Circuit"); *Ginwright v. Dep't of Revenue for Alabama*, No. 2:12-CV-473-WC, 2013 WL 1187943, at *5 (M.D. Ala. Mar. 21, 2013) ("[T]he Eleventh Amendment immunity bar insulates the State from suit for alleged violations under FMLA's self-care provision."). Accordingly, ALDOT's motion to dismiss is due to be granted as to Kennedy's claims against it under the FMLA's self-care provisions.

As ALDOT recognizes, however, *Ex parte Young* provides an exception to sovereign immunity where the plaintiff alleges an ongoing violation of rights under the FMLA and seeks prospective injunctive relief against an appropriate state official in his or her official capacity. (Doc. No. 33 at 18 (quoting *Wayne v. Fla. Dep't of Corr.*, 157 F. Supp. 3d 1202, 1207 (S.D. Fla. 2016)).) Construing the Amended Complaint in the light most favorable to Kennedy, he seeks prospective relief with respect to his FMLA retaliation claim in the form of a "permanent injunction against unfair treatment."[13] (Doc.

---

[12] In *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721, 740 (2003), the Supreme Court held that Congress legitimately abrogated state sovereign immunity with respect to state employee's claims alleging that the state failed to comply with the FMLA's family-care provisions.

[13] Kennedy also seeks injunctive relief in the form of an apology letter "from all people involved in these actions." (Doc. No. 32-1 at 6.) An order forcing individuals who are not defendants to speak in a manner potentially violative of their beliefs by requiring them to provide a written apology is not a cognizable form of prospective equitable relief to remedy ALDOT's alleged ongoing FMLA-violative conduct. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,

No. 32-1 at 6.) It is clear from the context of this request that Kennedy is seeking to be made whole. (*Id.*) While his claim for injunctive relief lacks specificity, a more specifically worded complaint against the appropriate ALDOT official might be able to state a claim for appropriate prospective injunctive relief to remedy ongoing effects of the alleged retaliation related to Kennedy's disciplinary history and eligibility for pay raises. *Grant*, 2023 WL 2416262, at *4 (citing *Woldeab*, 885 F.3d at 1291–92, in recognizing the propriety of allowing an opportunity to amend where "the plaintiff never clearly indicated that he did not want to amend his complaint and … a more carefully crafted complaint with more specific allegations against the proper defendant might have been able to state a claim").

Kennedy sought leave to amend his complaint to cure any pleading deficiencies. (Doc. No. 38 at 5-6, 10.) The Federal Rules of Civil Procedure provide that, when amendment requires leave of court, "[t]he court should freely give leave when justice so

---

535 U.S. 635, 645 (2002) (noting that *Ex parte Young* creates an exception to sovereign immunity which applies in which the plaintiff seeks *prospective injunctive relief to end continuing violations* of federal law); *Woodruff v. Ohman*, 29 F. App'x 337, 346 (6th Cir. 2002) (stating that "[t]he law … is not usually concerned with procuring apologies to make morally right a legal wrong done to the plaintiff," noting that, "[i]n the specific context of gender discrimination and retaliation, an apology will little serve the purposes of Title VII," and further observing the lack of "authority … that would permit a court to order a defendant to speak in a manner that may well contravene the beliefs the defendant holds"); *Berman v. Kafka*, No. 3:13-CV-1109-J-JBT, 2015 WL 12940184, at *3 (M.D. Fla. July 10, 2015) (collecting cases in support of the principle that an apology letter is generally not a cognizable form of equitable relief); *Walker v. Iske*, No. 8:12-CV-1539-T-30AEP, 2012 WL 5341380, at *2 (M.D. Fla. Oct. 29, 2012) (same, in a civil rights action for violation of First Amendment rights); *Devonish v. Atl. Cnty. Just. Facility*, No. CIV. A. 10-1866 (JBS, 2010 WL 3024858, at *3 (D.N.J. July 29, 2010) ("[T]he remedy of "apology" is not cognizable, either within the meaning of a Section 1983 action or as a general legal remedy that a court has the power to order, under any provision."). Kennedy also sought restoration of FMLA leave that was "taken" from him, but that claim for injunctive relief appears related to his claim for FMLA interference and will be discussed in the section of this Recommendation that addresses that claim. (Doc. No. 32-1 at 6.)

requires." Fed. R. Civ. P. 15(a)(2). Generally, a *pro se* plaintiff must be afforded "*at least one*" opportunity to amend the complaint if the amended complaint might state a claim upon which relief could be granted. *Woldeab v. Dekalb Cnty. Bd. of Educ*., 885 F.3d 1289, 1291 (11th Cir. 2018) (emphasis added). Further, the policy of the Federal Rules of Civil Procedure favoring liberal amendment exists to facilitate determination of claims on their merits, rather than allowing litigation to become a survival exercise in the technical points of pleading. *Davis v. Delta Air Lines, Inc*., No. 18-25361-CIV, 2019 WL 13261027, at *2 (S.D. Fla. May 30, 2019) (citing *Dussouy*, 660 F.2d at 597–98)). The court recognizes that Kennedy is proceeding *pro se* and lacks legal training and experience drafting FMLA complaints.

ALDOT opposes the request for leave to amend, arguing generally that any amendment cannot remedy Kennedy's failure to state a claim upon which relief can be granted. (Doc. No. at 3-4). However, as discussed above, at this stage of the pleadings, ALDOT is not able to prevail on its arguments that Kennedy's factual allegation affirmatively demonstrates that he *cannot* state an FMLA retaliation claim under any circumstances due to unfixable issues such as the method and timing of providing FMLA leave notice. Rather, at this point, the deficiencies in Kennedy's FMLA retaliation claim are more properly characterized as a need for more factual allegations specifically setting forth the basis of his claim and an amendment naming the proper defendant to any FMLA self-care claims for injunctive relief, both of which which could conceivably be cured by an amendment. *See Woldeab*, 885 F.3d at 1291–92 (holding that, "because a more carefully drafted complaint, which includes more specific allegations against the correct defendant,

*might* state a Title VII claim, Woldeab's complaint does not fit into the futility exception to *Bank*[, 928 F.2d 1108]," and the *pro se* plaintiff should have been granted an opportunity to amend to name the correct defendant and replead the factual allegations (emphasis in original)).

ALDOT also points out that, in his motion to amend, Kennedy does not set forth the detailed factual allegations that he intends to put in an amended complaint to cure all pleading deficiencies, and that Kennedy has already been afforded one opportunity to amend. Denying a motion to amend is within the court's permissible range of options when the plaintiff fails to identify *any* new facts that might form the basis for stating a claim upon which relief can be granted. *See Grant*, 2023 WL 2416262, at *4. However, in this situation, the Amended Complaint itself is not so devoid of any indication that Kennedy's claims are meritless that the court can definitively conclude that an opportunity to amend would be futile. The court is not *required* to deny Kennedy the opportunity to amend merely because his *pro se* motion to amend fails to provide sufficient additional factual allegations or because he has been given one opportunity to amend already. *Id.*; *see also Silberman*, 927 F.3d at 1132 (recognizing that precedent requiring that "a [*pro se*] plaintiff 'must be given *at least* one chance to amend[]' seemingly leav[es] open the possibility that, in some situations, further leniency may be warranted in recognition of the difficulty in proceeding *pro se*" (quoting *Bank*, 928 F. 2d at 1112 (emphasis added in *Silberman*))).

Rather, in light of Kennedy's *pro se* status, the preference for deciding cases on the merits, the discretion afforded the court to allow amendment, the mandate under Fed. R. Civ. P. 15(a) to "freely" allow amendment "where justice so requires," and the failure of

ALDOT to demonstrate that amendment would necessarily be futile (except as to claims over which the court lacks subject matter jurisdiction), the court is inclined to provide Kennedy only <u>one</u> additional opportunity to amend his complaint. Thus, Kennedy will have one more opportunity to specifically state his family-care and/or equitable self-care FMLA retaliation claims, name an appropriate state official (rather than a state agency) as a defendant for purposes of injunctive relief with respect to any equitable self-care FMLA retaliation claim, and to more specifically state his claims for injunctive relief. Notwithstanding, the motion to dismiss for lack of subject matter is due to be granted as to any self-care FMLA retaliation claims Kennedy may be asserting against ALDOT.

2.    FMLA Interference Claims

Construing the Amended Complaint most favorably to Kennedy, he asserts that ALDOT interfered with his FMLA rights by denying FMLA leave for leave taken on June 30, 2021 and July 15, 2021, even though he told his supervisor in person that he needed to take FMLA leave for those days. (Doc. No. 32-1 at 4.) He also alleges that ALDOT interfered with his FMLA rights by "taking away" FMLA leave hours. It is unclear from the Amended Complaint whether this particular interference claim arises from ALDOT removing FMLA leave designation for hours of leave taken on June 30 and July 15, 2021, or from ALDOT applying FMLA leave to some other unspecified hours for which Kennedy did not seek FMLA leave and that did not qualify for FMLA leave. (Doc. No. 32-1 at 4 (alleging that ALDOT interfered with "Kennedy's FMLA rights by taking FMLA hours away without approval or used for an approved medical leave" and that "FMLA was not approved by Kennedy or used for a medical disability," but also alleging that "Kennedy

29

was denied the use of FMLA on 6-30-2021 and 7-15-2021").) Further, it is unclear from the Amended Complaint whether Kennedy asserts his claims pursuant to the FMLA's family care provisions, or whether he asserts his claims pursuant to the FMLA's self-care provisions.

At the outset, as with Kennedy's FMLA retaliation claims, ALDOT is entitled to dismissal of Kennedy's FMLA interference claims for lack of jurisdiction insofar as those claims arise out of FMLA's self-care provisions. *Coleman.*, 566 U.S. at 33 (hold[ing] that "the States' immunity as sovereigns in our federal system" bars FMLA self-care lawsuits against States).

The FMLA prohibits employers from interfering with, restraining, or denying the right to FMLA leave. 29 U.S.C. § 2615(a). "To prove FMLA interference, [the plaintiff] must demonstrate 'that [he] was denied a benefit to which [he] was entitled under the FMLA,' *Martin*, [543 F.3d at 1266–67,] and that [he] 'has been prejudiced by the violation in some way.' *Ragsdale v. Wolverine World Wide, Inc*., 535 U.S. 81, 89, 122 (2002)." *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014); *see also Graves v. Brandstar, Inc*., 67 F.4th 1117, 1121 (11th Cir. 2023) (holding that, to recover on an FMLA interference claim, "a plaintiff must satisfy three elements:" (1) "that [he] was entitled to a benefit under the FMLA;" (2) "that h[is] employer denied h[im] that benefit;" and "harm, or prejudice, resulting from the employer's interference with h[is] exercise (or attempted exercise) of an FMLA benefit" (citations and internal quotation marks omitted)).

ALDOT argues Kennedy cannot demonstrate that he is entitled to FMLA leave for the June 30 and July 15, 2021 dates on which he was denied leave. To make this argument,

ALDOT relies on a document Kennedy submitted as an attachment to his original Complaint in which he states that he "forgot to document [the June 30, 2021 leave] as FMLA, notified [his supervisor,] Taylor Oliver,"[14] and that he "told ... Oliver that [he] had another follow up doctor appointment ... for [his] foot"[15] on July 15, 2021. (Doc. No. 1-17 at 5-6.)  The cited document is simply a compilation of Kennedy's notes in a document he titled "Rebuttal to Absenteeism – excessive absences and tardiness." (*Id.* at 4.) It is not attached to his Amended Complaint, nor does he rely on it in his Amended Complaint. Nor does ALDOT explain on what legal authority the court might consider this document at the motion to dismiss stage without converting the motion to one for summary judgment, which ALDOT did not invite the court to do[16] and which the court declines at this time to do. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (noting that, because an earlier pleading is abandoned and superseded by an amended pleading, "[w]hen

---

[14] ALDOT merely states in its motion to dismiss that, in his rebuttal to the reprimand, Kennedy "admits that he 'forgot to document FMLA.'" (Doc. No. 33 at 14 (quoting Doc. No. 1-17 at 5-6).) ALDOT neglects to mention the fact that Kennedy's notes immediately go on to state that he "notified ... Oliver" (Doc. No. 1-17 at 5), nor does ALDOT explain why such notification would have fallen short of the FMLA's requirements. It simply cannot be determined from Kennedy's cryptic notes when or how he notified Oliver or whether that notification was sufficient. On the face of the Amended Complaint, it is at least plausible that Kennedy provided adequate notice, though the adequacy of notice would ultimately require further factual determinations. ALDOT's argument is better suited to a motion for summary judgment, where Kennedy would be on notice to come forward with additional evidence explaining his notes and demonstrating whether the notice he provided ALDOT was sufficient.

[15] ALDOT argues that an appointment for Kennedy's foot would not fall within his approved FMLA leave. (Doc. No. 33 at 14.) This argument is more appropriate for summary judgment, where ALDOT could come forward with evidence (or cite evidence filed by Kennedy) in support of its argument, and where Kennedy would be on notice to come forward with evidence showing whether his foot-related leave was related to his FMLA-eligible condition.

[16] In support of its motion to dismiss, ALDOT cited the standard of review for a motion to dismiss and did not seek application of the summary judgment standard. (Doc. No. 33 at 3-4.)

[the plaintiff] filed the second amended complaint, the first amended complaint (and its attached exhibits) became a legal nullity"); *Hernandez v. J.P. Morgan Chase Bank N.A.*, No. 14-24254-CIV, 2016 WL 2889037, at **4-5, 7 (S.D. Fla. May 16, 2016) (reasoning that, because an amended pleading supersedes an earlier pleading, and because, on a motion to dismiss, the court must limit its consideration to the pleadings and exhibits thereto, the court would not consider exhibits that had been attached to an earlier complaint (or other extrinsic documents) "in assessing whether Plaintiff's latest complaint fails to state a claim," even if the documents attached to the earlier pleading contradicted the plaintiff's allegations in the amended pleading). Looking solely at the Amended Complaint, it appears plausible that Kennedy notified his supervisor of the need to take FMLA leave and that the purpose of the leave was FMLA-eligible, and nothing in the Amended Complaint indicates that the notice or the purpose of the leave disqualified the leave from FMLA eligibility. At the very least, neither the Amended Complaint nor Kennedy's earlier-filed notes compel the conclusion that an opportunity to amend must necessarily be futile.

ALDOT also argues that Kennedy's FMLA interference claims are due to be dismissed because Kennedy failed to show that he had been prejudiced in any way by alleged interference in denying or "taking away" FMLA leave hours. "[I]n order to prove that [he] was 'prejudiced' by an FMLA violation, a plaintiff" is not required to "demonstrate that [he] is entitled to traditional damages (as opposed to equitable relief);" rather, he "need only demonstrate some harm remediable by either 'damages' or 'equitable relief.'" *Evans*, 762 F.3d at 1296; *see also Boykin v. Home Choice of Alabama, Inc*., No.

CV 18-0281-WS-MU, 2018 WL 5315210, at *4 (S.D. Ala. Oct. 26, 2018) (denying a motion to dismiss FMLA interference claims where "[i]t is at least plausible at this early stage of the litigation that [the plaintiff] may be able to demonstrate some harm from the denial of her FMLA leave that may be remediable by equitable relief," even though the plaintiff "ha[d] not alleged any loss of compensation, benefits or monetary losses sustained as a direct result of the alleged interference"). ALDOT is correct that it is not possible to tell from the Amended Complaint whether Kennedy suffered any compensable damage from the denial of FMLA leave or whether any equitable relief could restore any past use of non-FMLA leave or otherwise provide a meaningful remedy. Still, as Kennedy is being allowed an opportunity to amend with respect to his other claims and as ALDOT has not affirmatively demonstrated that amendment of his FMLA interference claims (other than those subject to dismissal for lack of jurisdiction) would necessarily be futile, the court will allow Kennedy <u>one</u> more opportunity to amend his FMLA interference claims.[17] Kennedy will have one opportunity to more specifically state his family-care and/or equitable self-

---

[17] The court is not persuaded by ALDOT's argument that Kennedy should not be allowed an opportunity to amend because he has already been given one opportunity to amend. Nothing *mandates* that Kennedy be given *only* one opportunity to amend, particularly in light of his *pro se* status and the technical requirements of pleading FMLA and other employment discrimination and retaliation claims. *See Grant*, 2023 WL 2416262, at *4 ("In some situations, further leniency – or 'an extra dose of grace' – may be warranted 'in recognition of the difficulty in proceeding *pro se*.'" (quoting *Silberman*, 927 F.3d at 1132–33)); *Silberman*, 927 F.3d at 1132 (recognizing that precedent requiring that "a [*pro se*] plaintiff 'must be given *at least* one chance to amend[]' seemingly leav[es] open the possibility that, in some situations, further leniency may be warranted in recognition of the difficulty in proceeding *pro se*" (quoting *Bank*, 928 F. 2d at 1112 (emphasis added in *Silberman*)).)

care FMLA interference claims, name an appropriate state official (rather than a state agency) as Defendant for purposes of injunctive relief with respect to any equitable self-care FMLA interference claim, and to more specifically state his damages and claims for injunctive relief. Even so, the motion to dismiss is due to be granted as to any self-care FMLA interference claims Kennedy may be asserting against ALDOT.

C.    ADA Claims

Kennedy alleges that ALDOT violated the ADA in the following ways: (1) disciplining him in violation of his ADA agreement and because he had an ADA agreement; (2) requiring him to move his work truck to his work station in Opelika; and (3) pressuring his doctor's office to state that he could not drive so that ALDOT could remove his driving privileges at work and, as a result, require him to transfer to a different job position. (Doc. No. 32-1 at 6.) Though Kennedy's work driving privileges have since been restored, there is nothing in the Amended Complaint to suggest that he was also restored to his previous, more desirable position at ALDOT. Construing Kennedy's Amended Complaint generously, the position to which he was transferred is less desirable and, somewhat counterintuitively, requires him to drive farther to get to work. He seeks monetary damages as well as injunctive relief. His request for injunctive relief is vague: he seeks a permanent injunction against ALDOT due to "unfair treatment."

ALDOT does not move to dismiss Kennedy's ADA claims for injunctive and monetary relief on grounds that the requested relief is vague or that Kennedy provided insufficient factual allegations to establish that ALDOT took adverse employment action against him on the basis of a disability. Rather, ALDOT moves to dismiss Kennedy's ADA

claims solely on grounds that the State of Alabama enjoys sovereign immunity from Kennedy's ADA claims. ALDOT is correct that Kennedy may not seek monetary damages under the ADA "because Congress failed to validly abrogate the States' sovereign immunity." *Henderson v. Thomas*, 891 F. Supp. 2d 1296, 1312 (M.D. Ala. 2012). "Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court." *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986). Congress has not legitimately abrogated States' Eleventh Amendment immunity with respect to employment disability discrimination claims under the ADA. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001); *Williams v. Allen*, No. 1:20-CV-00186-JPB, 2023 WL 2977366, at *2 (N.D. Ga. Apr. 17, 2023). Therefore, ALDOT's motion to dismiss is due to be granted as to Kennedy's ADA claims against it, as those claims are barred by sovereign immunity.

Nevertheless, as ALDOT recognizes, "[e]ven if a state has sovereign immunity under the Eleventh Amendment for ADA claims, a plaintiff may rely on *Ex parte Young* to maintain an action for injunctive relief" in a suit against state officials for violation of federal law. *Williams*, 2023 WL 2977366, at *6; *see Ex parte Young*, 209 U.S. 123 (1908). *Ex parte Young* provides an exception to sovereign immunity where, as here, the plaintiff alleges an ongoing violation of rights under the ADA and seeks prospective injunctive relief. *Henderson*, 891 F. Supp. 2d at 1312. Kennedy alleges, at the very least, that, as a result of ALDOT's alleged disability discrimination in violation of the ADA, he is currently employed by ALDOT in a less desirable position than he previously held, which

requires longer hours and comes with other disadvantages compared to his previous position. He also seeks injunctive relief for "unfair treatment," which construed in the light most favorable to him and taking into account his *pro se* status would include injunctive relief of reinstatement to his previous position or to a position comparable to his previous position. *See Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) ("[R]equests for reinstatement constitute prospective injunctive relief that fall within the scope of the *Ex parte Young* exception and, thus, are not barred by the Eleventh Amendment."); *Gideon v. Auburn Univ.*, No. 3:22-CV-176-RAH-SMD, 2022 WL 17253633, at *4 (M.D. Ala. Nov. 28, 2022) ("The Court … finds that reinstatement is a form of prospective injunctive relief which may be sought against Camus in her official capacity under the *Ex parte Young* exception."); *Book v. Dep't of Econ. Dev.*, No. 4:21-CV-81 (CDL), 2021 WL 5150072, at *3 (M.D. Ga. Nov. 4, 2021) ("[The plaintiff's] ADA and FMLA claims for reinstatement … are not barred by sovereign immunity."); *Williams v. Dewey*, No. 7:15-CV-172 (WLS), 2016 WL 890575, at *2 (M.D. Ga. Mar. 8, 2016) (relying on *Lane* in denying a motion to dismiss claims for prospective reinstatement relief in an ADA case).

Kennedy sued ALDOT, not a state official as required under *Ex parte Young.* However, Kennedy has specifically moved for leave to amend to cure any deficiencies in his Amended Complaint. (Doc. No. 38 at 5-6, 10.) ALDOT opposes Kennedy's motion to amend, arguing generically that amendment would not cure Kennedy's failure to state a claim upon which relief can be granted. *See Wade v. Daniels*, 36 F.4th 1318, 1328 (11th Cir. 2022) (explaining that "[l]eave to amend should be freely given, but a district court

36

can deny leave to amend the complaint when amendment would be futile," such as when the amended complaint would still be subject to dismissal).

ALDOT is correct that no additional facts could prevent sovereign immunity from barring Kennedy's ADA claims for monetary relief. However, ALDOT failed to specifically address Kennedy's motion to amend as it relates to ADA claims for injunctive relief, and it failed to explain why amendment could not cure Kennedy's failure to name the appropriate ALDOT official as Defendant with respect to those particular claims. "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy*, 660 F.2d at 598. Because amendment might state a cognizable ADA claim for injunctive relief, and because a *pro se* plaintiff is entitled to appropriate consideration of his inexperience with technicalities of pleading, justice favors freely allowing Kennedy an additional opportunity to amend, even though he has amended his complaint once already. *See Woldeab*, 885 F.3d at 1291 (11th Cir. 2018) (recognizing that, "[w]here a more carefully drafted complaint might state a claim," a *pro se* plaintiff must be given "*at least* one chance to amend the complaint before the district court dismisses the action with prejudice" (emphasis added; citations and quotation marks omitted)); *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) ("[A] district court's discretion to dismiss a complaint without leave to amend is 'severely restrict[ed]' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.' *Dussouy* [, 660 F.2d at 597].."). Therefore, the court will freely grant

Kennedy <u>one</u> opportunity to amend his ADA claims for prospective injunctive relief to name the proper Defendant and properly plead those claims.

**V.    CONCLUSION**

Accordingly, it is the RECOMMENDATION OF THE MAGISTRATE JUDGE that

1. Kennedy's motion to amend be GRANTED and that Kennedy shall file an amended pleading within 14 days after a ruling by the court on this Recommendation. In the amended pleading, Kennedy shall do the following:

   a. Kennedy shall amend his complaint to more specifically state any family-care FMLA claims, any self-care FMLA claims for prospective equitable relief, and any ADA claims for prospective equitable relief.

   b. Kennedy shall amend his complaint to name an appropriate state official (rather than a state agency) as a defendant for purposes of injunctive relief with respect to any equitable self-care FMLA retaliation and ADA claims.

   c. The amended complaint must set out in separately numbered paragraphs a short, plain statement of the facts on which Plaintiff bases his claims. To the extent possible, for each act of alleged discrimination or other wrongful conduct, Plaintiff should include the date(s) of the alleged wrongful conduct, a **sufficient** description of the alleged wrongful conduct, the names of the Defendant(s) or other

38

persons who allegedly engaged in that conduct, and the facts supporting his contention that wrongful conduct occurred.

d.      The amended complaint must set out Plaintiff's legal claims in separate counts, with one claim per count, **referencing the specific allegations of fact that support each legal claim**. "If doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count." Fed. R. Civ. P. 10(b).

e.      The amended complaint shall state plainly the monetary damages and injunctive relief Plaintiff requests from the court.

f.      The amended complaint shall comply with the Federal Rules of Civil Procedure, including Rule 8(a), Rule 8(d), and Rule 10.[18]

g.      That Plaintiff be advised that failure to timely file an amended complaint in accordance with the Court's Order may constitute grounds for dismissal for failure to prosecute this case and for failure to comply with the Court's orders.

2.      ALDOT's motion to dismiss Kennedy's FMLA self-care and ADA claims for lack of jurisdiction (Doc. No. 33) be GRANTED, and that Kennedy's

---

[18] The Federal Rules of Civil Procedure may be found on the court's website at https://www.almd.uscourts.gov/representing-yourself. They may also be found at https://www.almd.uscourts.gov/about/rules-orders-procedures.

FMLA self-care and ADA claims against ALDOT be DISMISSED without prejudice for lack of jurisdiction.

3.    ALDOT'S motion to dismiss Kennedy's Amended Complaint for failure to state a claim upon which relief can be granted (Doc. No. 33) be GRANTED IN PART and DENIED IN PART, as follows:

a.    ALDOT's motion to dismiss claims be GRANTED IN PART as to Kennedy's Title VII claims and that Kennedy's Title VII claims be DISMISSED with prejudice.

b.    In light of the granting of Kennedy's motion to amend, ALDOT's motion to dismiss for failure to state a claim be DENIED IN PART as moot[19] as to all remaining claims, without prejudice to ALDOT to reassert the same arguments in opposition to an amended pleading.

4.    This action be referred back to the undersigned for further proceedings.

It is further ORDERED that the parties shall file any objections to this Recommendation **on or before February 23, 2024**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Plaintiff is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

---

[19] The recommendation to deny the motion to dismiss in part is based on the recommendation to grant the motion to amend, not on the merits (or lack thereof) of the arguments in the motion to dismiss.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 8th day of February, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE